Toro Development Co., Petitioner v. Commonwealth of Pennsylvania, Department of Environmental Resources et al., Respondents.

Argued November 21, 1980, before Judges MENCER, CRAIG and PALLADINO, sitting as a panel of three.

*Lee A. Donaldson,* with him *Charles W. Herald,* for petitioner.

*Ward T. Kelsey,* Assistant Attorney General, with him *James G. Groninger* and *Bruce E. Dice,* for respondents.

OPINION BY JUDGE CRAIG, February 4, 1981:

Toro Development Company (Toro), as intervenor, petitions this court for review of an environmental Hearing Board (EHB) order concerning a trunk sewer permit issued by the Pennsylvania Department of Environmental Resources (DER) to Plum Borough to con-

vey the sewage of Greendale Village, Toro's residential development, to Plum Borough's pre-existing Garlow Heights Sewage Treatment Plant (plant). The EHB order set aside and remanded the permit with directions that DER review four described matters relating to the plant.[1] The statute principally involved is the Pennsylvania Sewage Facilities Act.[2]

Toro's Greendale Village, with 145 units planned, has been partially built, according to counsel at argument; some dwelling units have been occupied pursuant to the construction and connection of the trunk sewer, the permit for which is at issue here.

Toro, seeking reversal of the EHB order, raises three issues:

> 1. Was this appeal to the EHB timely in relation to the issuance of the 1978 trunk sewer permit?

---

[1] The order states:

AND NOW, this 2nd day of November, 1979, it is hereby ordered that:

(1) Water Quality Permit No. 0278434 is set aside and remanded to DER;

(2) DER shall perform an in-depth review on application no. 0278434 which shall include an analysis of the following:

(a) the capacity added to the plant by the change in operation of the skimmer return line,

(b) the cause of the odor problems at the Garlow Heights Sewage Treatment Plant,

(c) the cause of the failure of the discharge from the Garlow Heights Sewage Treatment Plant to comply with the BOD effluent limitations stated in the plant's permits,

(d) whether the additional sewage from the sewer line will cause the organic wasteload measured in pounds per day of BOD discharged from the Garlow Heights Sewage Treatment Plant to exceed the organic wasteload measured in pounds per day of BOD upon which the sewage treatment plant's permit and design are based.

[2] Act of January 24, 1966, P.L. (1965), 1535, Section 5 of the Act, *as amended*, 35 P.S. §750.5(a).

2. May the EHB set aside or remand the trunk sewer permit solely upon the basis of treatment plant overload (rather than trunk sewer design or construction), in view of the 1977 approval of the borough's Sewage Facilities Plan Revision relating to the addition of the Greendale Village sewage to the plant?

3. Was there substantial evidence to support the EHB's finding that the plant does not have the capacity to handle the sewage from Greendale Village?

To summarize concisely, we present the chronology and data of this case in tabular form.

| Date | Action | Provisions of Permit or Plan (P:) or Requirements in Letter (R:) or Evidence at Hearing (E:) or Statements in Notice (S:) |
| --- | --- | --- |
| 1957 | Plant Permit issued by state | P: 1200 persons, design population[3] 120,000 gpd, maximum influent[4] 30 mg/1 maximum BOD, effluent[5] |

---

[3] EHB Finding of Fact (F. 13).

[4] Hydraulic capacity of plant, in gallons per day (F. 11).

[5] Maximum allowable organic load of effluent from plan, expressed as biochemical oxygen demand in terms of milligrams per liter, equivalent to 85% reduction of BOD, with raw sewage assumed to have 200 mg/1 BOD (F. 25). At a flow of 120,000 gpd, a BOD rate of 30 mg/1 happens to equal a volume load stated as 30 pounds.

| | | |
|---|---|---|
| June 21 1971 | DER letter to borough re: plant | R: 20 mg/1 BOD (5-day average) constitutes "effluent requirements applicable to your facilities necessary to achieve compliance with water quality standards"[6] |
| 1974 | Plant Permit (federal) issued by state as agent | P: 30 mg/1 BOD (30-day average) 45 mg/1 BOD (7-day average) maximum, effluent[7] |
| Nov. 28 1977 | Revision to borough's Sewage Facilities Plan, approved by state | P: To include Greendale Village development and to include the trunk sewer line |
| May 11-26 1977 | Plant: flow measurement | E: 86,000 gpd average influent 106,000 gpd average flow, including 20,000 gpd recirculation[8] |
| June-Nov. 1977 | Plant: organic analysis | E: Organic load (17 samples) ranging from less than 1 mg/1 BOD to 80, with 9 samples under 30 mg/1, 8 over 30[9] |

[6] The concentration of 20 mg/1 is equivalent to a discharge of 20 pounds per day if organic load expressed as BOD at 120,000 gallons per day. (F. 37)

[7] Interim effluent limitations in effect at present. (F. 24)

[8] (F. 21, 23) The recirculation is from the skimmer return line. Other flow measurements are stated in the EHB's discussion but not in findings. In its discussion, the EHB states that the plant presently serves 1330 people.

[9] F. 29, 30.

| | | |
|---|---|---|
| Dec. 10 1977 | Notice in Pa. Bulletin on Revision | S: Notice of approval of above Revision to Sewage Facilities Plan |
| June 7 1978 | Trunk Sewer Permit Issued | P: 538 persons, design population 35,000 gpd, average[10] daily flow from sewer; 30 mg/1 BOD, anticipated load, plant to stream (17 present, 13 additional in 5 yrs.)[11] |
| June 16 1978 | Trunk Sewer Permit Recorded | |
| June 24 | Notice in Pa. Bulletin on Trunk Sewer | S: Notice of Trunk Sewer Permit Issuance |
| July 13 1978 | Trunk Sewer Construction Started | E: |
| July 22 1978 | Trunk Sewer Appeal filed by Objectors | E: |

### Timeliness of Appeal as to Trunk Sewer Permit

Toro first contends that the appeal to the EHB by Milan Melvin Sabock, a Plum resident, from DER's issuance of the trunk sewer permit on June 7, 1978, was untimely. Notice of issuance of the permit was published in the Pennsylvania Bulletin on June 24, 1978. Sabock filed a notice of appeal with the EHB on July 24, 1978.

---

[10] F. 12, 36.

[11] The trunk sewer permit application also stated 85% as the plant operating efficiency.

Actions under the Sewage Facilities Act, pursuant to regulations at 25 Pa. Code §§71.1 *et seq.*, are subject to appeal to the EHB pursuant to 25 Pa. Code Chapter 21. At the time here pertinent, Section 21.21(a) stated:

> An appeal to the board from an action of the department shall be commenced by the filing of a written notice of appeal with the board within 30 days from the date of the receipt of written notice of an action of the department, unless a different time is provided by statute.

Section 23(b) then provided:

> Publication of a notice of action or proposed action by the department or board in the Pennsylvania Bulletin shall constitute notice to or service upon all persons, except a party, effective as of the date of publication.[12]

Sabock's July 24 appeal, filed within 30 days after publication of notice, appears to have been timely filed under 25 Pa. Code 21.21(a) above because, Sabock not having been a party to the permit proceedings, the publication constituted the notice to him.

Toro's contention that the appeal was forty-seven days after permit issuance (and thirty-eight days after permit recording) is of no avail against the regulation provisions which thus start the appeal time from the publication date.

The fact that Toro had commenced construction on July 13, thirty-six days following permit issuance, cannot alter the effect of the regulation. Obliged to know

---

[12] The sections are quoted as they appeared in 1978, at the time of the appeal. Although never appearing in the Pa. Code, the sections were published as rules in the Pennsylvania Bulletin at 6 Pa. B. 2987 (1978) effective at 7 Pa. B. 251 and at 1 Pa. B. 1298. The same provisions now exist in consolidated form and appear at 25 Pa. Code §21.52(a).

the law, Toro necessarily proceeded at its own risk when it went ahead earlier than the latest possible appeal date. *Silverco, Inc. v. Zoning Board of Adjustment*, 379 Pa. 497, 503, 109 A.2d 147, 150 (1954).

Nor does the regulation establish differing appeal periods as between applicant parties and potential third-person objectors. For each the appeal period is the same, thirty days after notice.

Therefore, an appeal as to the merits of the trunk sewer permit, itself, was properly before the EHB.

### Authority of EHB To Set Aside This Trunk Sewer Permit After Sewage Facilities Plan Revision Approval

However, the design, construction and connection of the trunk sewer in itself has not been shown by the record, or even claimed by any of the parties, to be in violation.

Therefore, Toro's second position is that the matter actually presented to the EHB here, and acted upon by that body, was an attack upon DER's approval of the 1977 sewage plan revision, which had authorized sewage from Greendale Village to be processed by the Garlow Heights plant, rather than EHB consideration of the trunk line sewer permit itself. Toro claims that, because no timely appeal had been taken from the sewage plan revision approval, the EHB did not have the authority to set aside the trunk line sewer permit solely on the basis of evidence about the capacity and operation of the plant.

In support of this argument, Toro offered the testimony of DER engineers[13] as to sewage permit ap-

---

[13] In particular, Dave Plank, a sanitary engineer for DER, testified as follows:

Q. Mr. Plank, if a development is to go into a new sewage treatment plant or into an existing sewage treatment plant, these patterns of applications, approvals and permits must be followed; that is true, is it not?
A. That's correct.

proval procedure. The testimony revealed that once a sewage plan revision is approved, an applicant submits

Q.  Okay. In this case, it was tripartite; the planning module first?

A.  Yes.

Q.  And then the collector sewers and then the sanitary sewer?

A.  That's correct.

Q.  When the Department of Environmental Resources, to your knowledge, makes its total review of these applications for the purpose of issuing approvals and/or permits, as the case may be, is the part you play, approving the planning module, in your judgment, the most significant analysis of the sewage treatment facility?

....

A.  I would say it is, mainly because if we felt that the treatment plant could not handle the additional flow, or it was organically overloaded, then we would recommend denial of the planning module.

Q.  Wouldn't it be correct, Mr. Plank, that if you didn't approve the planning module, that of course there wouldn't be any application for collector or trunk line sewers?

A.  That's correct.

Q.  Then once you approved the planning module, that is where that sewage is to go, isn't it, unless some other approval is given?

A.  That's correct.

....

Q.  You handled the application for this particular planning module in the same way, basically, as you handled all the hundreds of others that you have handled since you have been with the Department; is that correct?

A.  That's correct.

THE EXAMINER: ....

If you denied the supplement or the revision to the official plan, it's not that somebody couldn't submit an application for a sewer line, they would apparently submit an application, but it would be sent back for nonconformance with the existing sewage facility plan; is that correct?

THE WITNESS: That's correct, We would not accept a permit application unless the planning modules were approved.

the collector sewer and trunk line sewer applications as the final steps in a tripartite permit process. As long as those applications conform to the approved planning module, and meet DER specifications for other construction requirements,[14] they will be approved.

The objectors, in the hearing before the board, presented evidence wholly relating to the adverse effects of the Garlow Heights plant.

We agree with Toro that this evidence essentially attacked the original sewage plan revision approved by DER, rather than the trunk line sewer permit. An appeal from the sewage plan revision[15] approval, as such, could be taken only as late as January 9, 1978, thirty days after publication of DER approval in the Pennsylvania Bulletin.

As noted above, the objector did not file this appeal until July 24, 1978, so that the EHB, with no factual basis for overturning the trunk sewer permit, had no legal jurisdiction to re-open by way of appeal the sewage plan revision approval. We have repeatedly held that the EHB has no jurisdiction over a matter not timely appealed. *Lebanon County Sewage Council v. Department of Environmental Resources*, 34 Pa. Commonwealth Ct. 244, 382 A.2d 1310 (1978); *Rostosky v. Department of Environmental Resources*, 26 Pa. Commonwealth Ct. 478, 364 A.2d 761 (1976).

The EHB order here clearly rests upon the sewage plant issue arising from the 1977 revision; as quoted in footnote 1, the order deals with the plant's capacity

---

[14] DER's concern with the collector and trunk line sewers relates to construction drawings, slopes and manholes, types of pipe, bedding and backfilling, and soil and erosion plans. After determining that these factors were all in order, Mr. Luci, a DER facilities engineer, approved the trunk line permit.

[15] See 25 Pa. Code §21.21 and 25 Pa. Code §23(b), set forth in the text above.

and the plant's odors and organic wasteload. That cannot be done by the EHB within the procedural framework of this appeal.

### Evidence To Support Findings

In view of the decision reached, there is no need to review the factual findings.[16]

Noting, however, that the sewage plant itself may well bear study (*e.g.*, hydraulically, addition of approximately 35,000 gpd forecast from Greendale Village to the 86,000 gpd inflow, as measured in May of 1977, could reach or exceed the 120,000 gpd limit imposed by the original sewage plant permit), we also note that DER has authority, apart from these appeal procedures, to prevent nuisances and require remedial measures as to sewage treatment plants, sufficient to protect the public interest.

The present EHB decision, however, must be reversed.

### ORDER

Now, February 4, 1981, the order of the Environmental Hearing Board dated November 2, 1979 (EHB order) is reversed and Water Quality Permit No. 0278434 is reinstated.

-----

[16] Toro has also questioned the impartiality of the hearing examiner in calling and questioning witnesses, with particular reference to the examiner's decision to call two DER engineers as witnesses.

However, close examination of the record indicates that the examiner's action was far from prosecutorial, as Toro alleges. In calling and questioning the witnesses, the examiner sought to shed light on the issue of why DER had issued the trunk sewer permit; he was merely fulfilling his duty to make a complete record of the hearings on which to base a conclusion. Moreover, there was no evidence of bias or of an adversarial perspective in his questioning, and all parties had the opportunity to cross-examine the witnesses.