**COUNTRY PLACE WASTE TREATMENT COMPANY, INC., Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1994.

Decided Jan. 5, 1995.

Terrance J. Fitzpatrick, for petitioner.

Stanley E. Brown, Asst. Counsel, for respondent.

Before DOYLE and KELLEY, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Country Place Waste Treatment Company, Inc. (Country) appeals from an order of the Pennsylvania Public Utility Commission (PUC) which adopted, in part, and modified, in part, an opinion and order issued by an administrative law judge (ALJ) sustaining a complaint filed by Cecil Rose and Annette Rose (Rose) against Country.

On October 18, 1989, Rose filed a formal complaint with the PUC against Country alleging that offensive odors emanated from Country's sewage treatment plant.[1] Country filed an answer denying the allegations in Rose's complaint and additionally asserting that the PUC lacked jurisdiction in the matter because Rose's complaint raised issues regarding air quality rather than the quality of Country's service.

Hearings were conducted before an ALJ who, on August 14, 1990, issued an initial decision and order concluding that jurisdiction was properly with the PUC and that Country was operating its waste treatment plant in violation of Section 1501 of the Public Utility Law (Law), 66 Pa.C.S. § 1501, because its plant was being operated in such a way as to emit offensive odors.[2]

Thereafter, Country filed exceptions to the ALJ's decision with the PUC, again asserting that the PUC lacked jurisdiction over the matter. The PUC, on April 25, 1994 entered its decision and order, concluding that it did, in fact, have jurisdiction over the matter and affirming, as modified by its own decision and order, the ALJ's decision.

Country petitioned this court to review the PUC's decision and order, raising the three following issues: 1) whether the PUC erred in concluding that it had authority to regulate odors allegedly emitted by Country's waste treatment facility; 2) whether there was substantial evidence to support the PUC's decision; and 3) whether the remedial action ordered by the PUC was beyond the scope of its authority.

Also before us is Country's motion to strike appendices "A" and "B" of the PUC's brief asserting that the matters raised therein were not part of the record below and that the PUC's inclusion of said appendices was in violation of Pa.R.A.P. 1921.[3] Initially we address Country's contention that the PUC lacks jurisdiction in this matter, because, if we so conclude, we need not address the additional issues raised by Country or its motion to strike appendices "A" and "B" of the PUC's brief.

■ As noted above, Country argues that the PUC lacked jurisdiction over the matters raised by Rose's complaint because the matters raised therein concerned air quality, an area regulated exclusively by the Department of Environmental Resources (DER) in the Air Pollution Control Act[4], rather than the quality of the service provided to Rose by Country. Country points out that the PUC is limited by Section 1501 of the Law, cited above, to regulating matters regarding a utility's "service" and/or its "facilities." Country asserts that the matters complained of herein by Rose, i.e. offensive odors, do not fall within these two areas. We agree.

---

1. We note that Rose, in their complaint, also alleged that Country's water company, Country Place Water, Inc., was providing inadequate water pressure. The ALJ found that adequate water was being provided by Country Place Water, Inc. Rose did not file exceptions to this determination and no issues relating to this matter are before us on appeal.

2. Section 1501, entitled, "Character of service and facilities," provides, in part, as follows:

 Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public. Such service also shall be reasonably continuous and without unreasonable interruptions or delay. Such service and facilities shall be in conformity with the regulations and orders of the commission.

3. Pa.R.A.P. 1921 provides:

 The original papers and exhibits filed in the lower court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court shall constitute the record on appeal in all cases.

4. Act of January 8, 1960, P.L. 2119, *as amended*, 35 P.S. §§ 4001–4106.

Initially, we note that although the ALJ, in his decision, concluded, in his conclusion of law one (1), that the PUC properly had jurisdiction over the matters set forth in Rose's complaint, he failed to set forth any findings or reasoning for so concluding. The PUC, in its decision, noted the ALJ's failure to address the jurisdictional issue raised by Country, and then, set forth, verbatim, *Country's exceptions* to the ALJ's decision on this issue which were as follows:

4. This Commission is a creature of statute, and its power to act in any particular case must be clear. *City of Philadelphia v. Philadelphia Electric Company*, 504 Pa. 312, 473 A.2d 997 (1984). Under the Public Utility Code, a complaint may be entertained *only* concerning "any law which the commission has jurisdiction to administer, or of any regulation or order of the commission." Section 701 of the Public Utility Code, 66 Pa.C.S. § 701.

5. The Roses' allegations of odor from the sewage treatment plant are an air quality matter which is beyond this Commission's jurisdiction and area of expertise. As acknowledged by the Initial Decision, the Commission has no standards concerning odor or ambient air quality, and the ALJ's "exhaustive research has failed to uncover any reported commission decision defining with more specificity the standard of service to be rendered by a sewage company and we have been unable to find any regulation of the commission dealing with that topic." (Initial Decision at 21). Unlike DER and EPA, the Commission has no equipment, personnel, or expertise to determine whether or not an odor, or perceived odor, violates standards for air quality. Furthermore, the Complainants have no special expertise, nor did they adduce evidence by a qualified witness, to establish that the odor they experienced was indeed offensive or a threat to the public health, safety, or welfare.

6. The Roses' complaint is directly analogous to the complaint in *Rovin v. Pennsylvania Public Utility Commission*, 94 Pa.Commonwealth Ct. 71, 502 A.2d 785 (1986), insofar as the Commission's jurisdiction is concerned. In *Rovin*, the Commonwealth Court held as follows;

We believe that the correct issue is whether PSWC furnished adequate, efficient, safe and reasonable water *service* to its customers. *See Barone v. Pennsylvania Public Utility Commission*, 86 Pa.Commonwealth Ct. 393, 485 A.2d 519 (1984). *It is apparent that the petitioner herein is not complaining about the quality of service, but rather is complaining about the quality of the water.*

*Water quality in Pennsylvania is statutorily regulated by the provisions of the Pennsylvania Safe Drinking Water Act ... and the Federal Safe Drinking Water Act.... Enforcement of those statutes is specifically vested in DER and the Federal Environmental Protection Agency.*

94 Pa.Commonwealth Ct. at 75–6, 502 A.2d at 787. (Emphasis added); (citations omitted).

7. By their own testimony, the Roses admitted that they are not complaining about CPWTC's (Country's) performance in accepting flows of waste or sewage from their vacation home. (N.T. 40). Rather, they are complaining about odor (i.e. air *quality*), and just as water *quality* is regulated by DER or EPA, and not this Commission, so too is air quality. Specifically, air quality is controlled by the provisions of what is commonly known as the Clean Air Act, 42 U.S.C. § 7401, *et seq.*, the Air Pollution Control Act, Act of January 8, 1960, P.L. (1959) 2119, *as amended*, 35 P.S. §§ 4001–4015, and the attendant regulations at 25 Pa.Code §§ 123.1–123.46, which are administered by EPA and DER. The Pennsylvania appellate courts have specifically recognized with respect to sewage facilities the primary and exclusive jurisdiction of DER: "DER has the authority ... to prevent nuisances and require remedial measures as to sewage treatment plants, sufficient to protect the public interest." *Toro Development Corporation v. Department of Environmental Resources*, 56 Pa.Commonwealth Ct. 471, 425 A.2d 1163 (1981).

8. This recognition by the courts that the environmental agencies, as opposed to the

Commission, possess jurisdiction over air quality makes sense from both pragmatic and regulatory standpoints. The Commission has no standards, staff, or equipment to regulate odors in the air. This alone would cause constitutional due process and notice deprivations for CPWTC if the Commission is to enforce remedial relief based upon its determinations of air suitability; in contrast, DER has the requisite expertise pursuant to the Pennsylvania Air Pollution Control Act and regulations thereunder. Accordingly, the Roses' request in their complaint for an adjudication as to whether the alleged odor is contrary to law is a determination which is beyond the Commission's statutory ability and expertise, and must be made in the first instance by environmental regulators.

9. Because the express language of Section 701 of the Public Utility Code, 66 Pa.C.S. § 701, empowers the Commission to entertain complaints *only* concerning laws which the Commission has jurisdiction to administer, the Roses' odor allegations must be dismissed as beyond the Commission's scope of regulation and jurisdiction.

(PUC's Opinion and Order of the PUC, pp. 6–8). (Emphasis in original)

Significantly, the PUC went on to state the following regarding the foregoing exceptions filed by Country:

> *None of the foregoing has been disputed by the Complainants nor has any rationale been offered that would lead us to discount the persuasive exceptions of the Respondent. It is apparent, based on Complainant's testimony, that they are not complaining about the quality of the service provided by Respondent, they are complaining about the quality of the air that is a by-product of the service that Respondent provides. Complainants have stated that they are not complaining about Respondent's acceptance of sewage, they are complaining about an alleged odor....*

Accordingly, we believe that there is enough evidence on the record to determine *that there clearly is an odor problem and that one of the sources of the odor is the Respondent's sewage treatment plant.*

However, we do not agree with Respondent's Exceptions that an odor problem emitted from a sewage treatment plant be equated with an air quality problem, and accordingly, that we do not have jurisdiction. On the contrary, we do not equate an odor problem emanating from a sewage treatment plant as an air quality problem. We expressly agree with the Judge's third Conclusion of Law:

> 3. A violation of Section 1501 of the Public Utility (66 Pa.C.S.A. Section 1501) occurs from the operation or owning by a public utility of a sewage company in such a manner that an odor akin to rotten eggs is emitted at the sewage treatment plant to such a degree that residents 500 yards away from the said sewage treatment plant are unable to enjoy their living environment.

Consequently, we believe the Commission has jurisdiction over this matter.

(PUC's Opinion and Order pp. 8–10). (Emphasis added).

It is clear from the foregoing that the PUC was also unable to provide a rationale as to why it had jurisdiction over the matters asserted by Rose, other than its conclusive statement that it does not equate the odor problem complained of by Rose as an air quality problem and that, therefore, it has jurisdiction. However, this final conclusion contradicts the statements set forth previously in its decision that no "rationale [has] been offered that would lead us to discount the persuasive exceptions of the Respondent," and that the Rose's complaints are "about the quality of the air that is a by-product of the service that Respondent provides." Additionally, the PUC's agreement with the ALJ's third (3rd) conclusion of law is not authoritative as this too is merely a conclusive statement having no basis or foundation in the record.

 Moreover, our independent review of the Law leads us to conclude that the PUC did not have jurisdiction over the matters complained of by Rose. As noted previously herein, Section 1501 of the Law grants the PUC authority to regulate the "service" and/or "facilities" of every public utility.

Section 102 of the Law, 66 Pa.C.S. § 102, defines the terms "service" and "facility" as used in Section 1501 as follows:

"Service." Used in its broadest and most inclusive sense, includes any and all acts done, rendered, or performed, and any and all things furnished or supplied, and any and all facilities used, furnished, or supplied by public utilities, or contract carriers by motor vehicle, in the performance of their duties under this part to their patrons, employees, other public utilities, and the public, as well as the interchange of facilities between the two of them....

"Facilities." All the plant and equipment of a public utility, including all tangible and intangible real and personal property without limitation, and any and all means and instrumentalities in any manner owned, operated, leased, licensed, used, controlled, furnished, or supplied for, by, or in connection with, the business of any public utility. Property owned by the Commonwealth or any municipal corporation prior to June 1, 1937, shall not be subject to the commission or to any of the terms of this part, except as elsewhere expressly provided in this part.

Although the definitions set forth above are to be broadly construed, nothing contained in either section, or in Section 1501 of the Law, grants the PUC authority to regulate matters regarding odors produced by a public utility.

Furthermore, Section 4004 of the Air Pollution Control Act, 35 P.S. § 4004, entitled "Powers and duties of the Department of Environmental Resources," at subsection (8), specifically directs that the "department shall have power and its duty shall be to—:"

(8) Receive, initiate and investigate complaints, institute and conduct surveys and testing programs, conduct general atmospheric sampling programs, make observations of conditions which may or do cause *air pollution,* make tests or other determinations at air contamination sources, and assess the degree of abatement required. (Emphasis added).

Section 4003 of the Air Pollution Control Act, 35 P.S. § 4003, defines "air pollution" as used in the foregoing section, as follows:

"**Air pollution.**" The presence in the outdoor atmosphere of any form of *contaminant,* including, but not limited to, the discharging from stacks, chimneys, openings, buildings, structures, open fires, vehicles, processes *or any other source of* any smoke, soot, fly ash, dust, cinders, dirt, noxious or *obnoxious* acids, fumes, oxides, gases, vapors, *odors,* toxic, hazardous or radioactive substances, waste or any other matter in such place, manner or concentration inimical or which may be inimical to the public health, safety or welfare or which is or may be injurious to human, plant, or animal life or to property or which unreasonably interferes with the comfortable enjoyment of life or property. (Emphasis added).

Section 4003, defines "Air contamination source," as "[a]ny place, facility or equipment, stationary or mobile, at, from or by reason of which there is emitted into the outdoor atmosphere any air contaminant." "Air contaminant" is defined as "[s]moke, dust, fume, gas, *odor,* mist, radioactive substance, vapor, pollen or any combination thereof." (Emphasis added).

Clearly, the DER, under the Air Pollution Control Act, has been granted specific authority by the Legislature to regulate "air contamination sources" producing "air pollution" which includes obnoxious odors. Significantly, nowhere in the Law is there any grant of authority to the PUC by the Legislature, either directly or indirectly, to regulate air pollution emanating from a public utility.

Accordingly, as the Legislature has placed jurisdiction of the matter at issue herein with the DER and not the PUC, we will vacate the order of the PUC and dismiss the complaint filed by Rose.

## ORDER

AND NOW, this 5th day of January, 1995, the order of the Public Utility Commission dated April 25, 1994 is vacated and the formal complaint filed in this matter by Cecil

and Annette Rose against Country Place Waste Treatment Company is dismissed.