PECO ENERGY COMPANY

v.

TOWNSHIP OF UPPER DUBLIN, Board of Commissioners of the Township of Upper Dublin and Shade Tree Commission of the Township of Upper Dublin.

Appeal of: Upper Dublin Township Board of Commissioners.

Commonwealth Court of Pennsylvania.

Argued March 5, 2007.

Decided May 1, 2007.

Gilbert P. High, Jr., Norristown, for appellant.

Jeffrey D. Hutton and Ward L. Smith, Philadelphia, for appellee, PECO Energy Company.

Adam D. Young, Asst. Counsel, Harrisburg, for appellee, Pennsylvania Public Utility Commission.

BEFORE: LEADBETTER, President Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

In this appeal, we are asked to determine whether Upper Dublin Township (Township) has the authority to regulate the manner in which a public utility trims shade trees within the Township's public rights-of-way. The Montgomery County Common Pleas Court (trial court) granted PECO Energy Company's (PECO) motion for judgment in mandamus. It held the Township possesses no authority to regulate PECO's vegetation management practices, which fall within the Public Utility Code's [1] definition of "utility service" and are solely regulated by the Pennsylvania Public Utility Commission (PUC). The Township, its Board of Commissioners, and its Shade Tree Commission (STC) (collectively, Appellants) appeal. We affirm.

PECO, a public utility and electric distribution company, operates 21 circuits within the Township. Every five years, PECO performs vegetation management on all Township circuits.

Sections 3020–3031 of the First Class Township Code (FCTC) [2] authorize the establishment of shade tree commissions to plant, remove, protect and maintain shade trees along township streets and highways. In 1994, the Township enacted a shade tree ordinance and created the STC.[3] Thereafter, the STC adopted rules and regulations governing tree trimming within the Township's public rights-of-way. The Township adopted the STC regulations as an ordinance.[4]

The STC regulations require a permit and prior STC approval for any person or entity, including public utilities, to cut, trim, prune or remove part of any tree in the public right-of-way. Township Code § A263–2B. In particular, Township Code § A263–2B(6), R.R. at 28a–29a, provides:

> Public utility companies subject to the jurisdiction of the [PUC] are subject to this permitting requirement. Utilities may apply for a blanket permit to prune around utility lines, the fee for which shall be $500. Public utilities may perform such pruning as is necessary to comply with the safety regulations of the PUC and to maintain a safe operation of their facilities, provided they shall comply with the provisions of these regulations, including the notification provisions and the specific pruning standards set forth herein. The [STC] will modify such specific pruning standards, upon application, where the public utility company demonstrates to its satisfaction that such pruning standards will not permit it to comply with the PUC's safety regulations for a period of three years of normal tree growth following completion of such pruning.

PECO planned to begin a cycle of tree trimming in early 2006. Although the parties discussed PECO's planned tree trimming, the parties did not reach an agreement. In January 2006, Appellants informed PECO that public utilities must comply with the shade tree ordinance. PECO responded with a letter stating its intentions to begin tree trimming in noncompliance with the ordinance. In its letter, PECO restated its position that PUC jurisdiction bars local regulation of utility functions. Appellants rejected PECO's ju-

---

**1.** 66 Pa.C.S. §§ 101–3316.

**2.** Act of June 24, 1931, P.L. 1206, *as amended,* 53 P.S. §§ 58020–58031.

**3.** *See* Township Code §§ 195.1–195.11; PECO's Complaint, Ex. A.; Reproduced Record (R.R.) at 23a–25a.

**4.** *See* Township Code §§ A263.1–A263.3; PECO's Complaint, Ex. B.; R.R. at 27a–31a.

risdictional argument and issued a cease and desist order.

In February 2006, PECO filed a complaint with the trial court seeking mandamus, declaratory relief, or a permanent injunction and other equitable relief. PECO's complaint alleged Appellants lack the authority to regulate public utilities' vegetation management practices, which are considered a utility "service" under the PUC's exclusive regulatory jurisdiction. Thus, PECO asserted, Appellants' shade tree ordinance is void as to public utilities.

Following the close of the pleadings, the parties [5] entered into a joint stipulation of uncontested facts and requested the trial court decide the merits of the action. The parties requested the trial court treat an outstanding motion as one for summary judgment and decide the central issue of whether first class townships may regulate the vegetation management practices of an electric public utility.

Ultimately, the trial court entered judgment for PECO on the ground the PUC possesses sole authority to regulate a public utility's vegetation management practices in its service territory. Consequently, the trial court held the Township's shade tree ordinance void as applied to public utilities. Appellants appealed.[6]

In its supporting opinion, the trial court recognized the Public Utility Code grants the PUC full authority to regulate the character of a public utility's service and facilities. 66 Pa.C.S. § 1501. The Public Utility Code, in 66 Pa.C.S. § 102, defines "service" as follows:

> Used in its broadest and most inclusive sense, includes any and all acts done, rendered, or performed, and any and all things furnished or supplied, and any and all facilities used, furnished or supplied by public utilities ... in the performance of their duties under this part to their patrons, employees, or other public utilities, and the public....

The trial court observed vegetation management, including the removal of trees, falls within the Public Utility Code's definition of utility "service." *W. Penn Power v. Pa. Pub. Util. Comm'n,* 134 Pa.Cmwlth. 53, 578 A.2d 75 (1990) (electric utility "service" is not confined to the distribution of electrical energy; it includes any and all acts related to that function, including vegetation management/tree trimming or removal). *See also Popowsky v. Pa. Pub. Util. Comm'n,* 653 A.2d 1385 (Pa.Cmwlth. 1995) (vegetation maintenance constitutes a utility service and must be performed in a safe, adequate, reasonable and efficient manner).

Additionally, the trial court cited Section 3502 of the FCTC, 53 P.S. § 58502, a general repeal provision which provides (with emphasis added):

> All other acts and parts of acts inconsistent with, supplied by, or appertaining to the subject matter covered by this act are repealed. It is the intention that this act shall furnish a complete and exclusive system for the government and regulation of townships of the first class, except as to the several matters enumerated in section 103 of this act [53 P.S. § 55103]. *This act shall not repeal or modify any of the provisions of the Public Utility [Code]* ....

---

5. The PUC intervened in support of PECO. Also, the Energy Association of Pennsylvania participated as friend of the court in support of PECO.

6. Our scope of review of a grant of summary judgment is plenary. *Jennison Family Ltd. P'ship v. Montour Sch. Dist.,* 802 A.2d 1257 (Pa.Cmwlth.2002). We will reverse the order only where the trial court erred or abused its discretion. *Id.*

Noting the FCTC does not repeal or modify any provisions of the Public Utility Code, the trial court thus concluded "the Public Utility Code preempts the FCTC with respect to the regulation of public utility companies." Tr. Ct. Slip. Op. at 7.

█ In addition, the trial court reviewed a line of appellate decisions addressing local government attempts to regulate public utilities. A third class city may not prescribe regulations related to a public utility's business, facilities or service. *York Water Co. v. City of York,* 250 Pa. 115, 95 A. 396 (1915). Like its statutory precursors, the Public Utility Code is intended to be the supreme law of the Commonwealth in the regulation and supervision of public utilities. *Newton Twp. v. Phila. Elec. Co.,* 140 Pa.Cmwlth. 635, 594 A.2d 834 (1991). "[T]his being so, it follows as a necessary sequence that all laws inconsistent with the powers thus conferred must be held to be repealed. . . ." *Id.* at 836.

█ The trial court also cited the following language in *County of Chester v. Philadelphia Electric Company,* 420 Pa. 422, 425–26, 218 A.2d 331, 333 (1966), confirming the PUC's role as sole regulator of public utilities:

> The necessity for conformity in the regulation and control of public utilities is as apparent as the electric lines which one views traversing the Commonwealth. If each county were to pronounce its own regulation and control over electric wires, pipe lines and oil lines, the conveyors of power and fuel could become so twisted as to affect adversely the welfare of the entire state. It is for that reason that the Legislature has vested in the [PUC] exclusive authority over the complex and technical service and engineering questions arising in the location, construction and

maintenance of all public utilities facilities.

The PUC's jurisdiction covers matters including rates, service, rules of service, hazards to public safety due to the use of utility facilities, installation of utility facilities, and location of utility facilities. *Id.*

Specific to the FCTC and the power of first class townships to regulate public utilities, the trial court cited *Duquesne Light Company v. Upper St. Clair Township,* 377 Pa. 323, 105 A.2d 287 (1954), where the Supreme Court held an electric public utility is not subject to local zoning ordinance regulation of uses and structures. In *Duquesne Light,* the Court stated:

> We therefore conclude that the policy of the Commonwealth in entrusting to the [PUC] the regulation and supervision of public utilities has excluded townships from the same field, and that no power in townships to enter that area can be read into the [FCTC] *by implication.* Unless the legislature has given an *express* grant of power to townships, the Commonwealth's own expressed policy on the subject is undiminished and supreme. . . . The Public Utility Code demonstrates without question that the Legislature of the Commonwealth of Pennsylvania has therein expressed its policy to commit the regulation of utilities to the [PUC] and to impose a duty upon utilities to *render efficient service.*

*Id.* at 334–35, 105 A.2d at 292–93 (emphasis in original). Applying the rationale in *Duquesne Light,* the trial court held nothing in the FCTC expressly or impliedly authorizes Appellants to regulate PECO or other public utilities in the area of vegetation management.

The trial court also rejected Appellants' argument that other legislation concerning the placement or maintenance of utility facilities on, under, or over public streets, authorizes Appellants to regulate public

utilities' vegetation management practices. In particular, the trial court concluded that even if another statute expressly authorized the Township to regulate municipal trees, it would be preempted. *See* Section 3502 of the FCTC, 53 P.S. § 58502 ("All other acts and parts of acts inconsistent with, supplied by, or appertaining to the subject matter of this act are repealed.") Accordingly, the trial court held neither the FCTC nor any other Pennsylvania statute expressly authorizes Appellants to regulate PECO's vegetation management practices in the Township.

## I. PUC Jurisdiction

Appellants contend this case presents an issue of first impression as to the extent a municipality may protect its assets located in a public right-of-way shared with public utilities. They argue the Township's right to protect its shade trees does not infringe on PUC jurisdiction over utility services.

Specifically, Appellants assert the focus of the PUC's regulation of utility service under 66 Pa.C.S. § 1501 [7] is on the character of service provided by the public utility, not on the collateral consequences of the utility's efforts to do so. Therefore, Appellants argue, public utilities must comply with reasonable municipal regulations designed to protect municipal assets. In support, Appellants cite *Rovin, D.D.S. v. Pennsylvania Public Utility Commission*, 94 Pa.Cmwlth. 71, 502 A.2d 785 (1986) and *Country Place Waste Treatment Company, Inc. v. Pennsylvania Public Utility Commission*, 654 A.2d 72 (Pa. Cmwlth.1995). In those cases, this Court held the PUC lacked jurisdiction over issues involving air and water quality, which are environmental matters specifically regulated by statutes administered by state and federal agencies, not the PUC. [8]

Here, Appellants argue, the legislature specifically authorizes municipalities to

---

7. 66 Pa.C.S. § 1501, **Character of service and facilities,** provides, in its entirety:

Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public. Such service also shall be reasonably continuous and without unreasonable interruptions or delay. Such service and facilities shall be in conformity with the regulations and orders of the commission. Subject to the provisions of this part and the regulations or orders of the commission, every public utility may have reasonable rules and regulations governing the conditions under which it shall be required to render service....

8. In *Rovin,* we determined that matters involving the quality or purity of water, rather than the quality or character of water service provided by a public utility, fall within the state Department of Environmental Re-

sources' (DER) and the federal Environmental Protection Agency's (EPA) jurisdiction under state and federal safe drinking water statutes. Accordingly, we held the complainant did not establish a violation of 66 Pa.C.S. § 1501 (public utility shall furnish and maintain safe and adequate service).

*Country Place* dealt with air quality. Despite 66 Pa.C.S. § 1501's broad definition of a utility's services, we concluded noxious odors come within the definition of contaminants under state and federal clean air statutes also administered by DER and EPA. Specifically, we noted nothing in the Public Utility Code authorizes the PUC to regulate air pollution emanating from a public utility. This is a matter of air quality rather quality of service provided by the utility. Thus it is a DEP or EPA matter, not a PUC matter.

*Rovin* and *Country Place* are distinguishable. They involved jurisdictional disputes between agencies with authority throughout Pennsylvania. They did not involve jurisdictional disputes between an agency with statewide authority and a municipality with limited geographic authority in Pennsylvania, as the present case addresses.

prescribe the manner in which public utilities use public right-of-ways. Particularly, Appellants cite Section 18 (use of streets by public utilities) of the Act of May 11, 1911, P.L. 244, *as amended,* 53 P.S. § 1991 (1911 Act) and Section 1511(e) of the Business Corporation Law of 1988(BCL), 15 Pa.C.S. § 1511(e) (additional powers of certain public utility corporations; streets and other public places).[9]

Appellants also argue PECO's decision to trim trees is an internal PECO management decision beyond the scope of the PUC's jurisdiction inasmuch as it has nothing to do with providing electric service. They cite *Pennsylvania Railroad Company v. Pennsylvania Public Utility Commission,* 187 Pa.Super. 590, 146 A.2d 352 (1958), *vacated,* 396 Pa. 34, 152 A.2d 422 (1959) (PUC's authority is statutory, not boundless; the PUC lacks jurisdiction over the management of a utility; management decisions are vested in the corporation, not the PUC).

Citing *West Penn Power,* 134 Pa. Cmwlth. 53, 578 A.2d 75, PECO and the PUC respond that there is no real argument as to whether a utility's vegetation management activities constitute "public utility service" solely regulated by the PUC under 66 Pa.C.S. § 1501.

■ PECO and the PUC also assert the legislature, by granting the PUC sole regulatory authority under 66 Pa.C.S. § 1501 over utilities' facilities and services, preempted local regulation of public utilities' facilities and services. As the trial court recognized, our Supreme Court repeatedly holds the Commonwealth, through the Public Utility Code and its predecessor statutes, gave the PUC all-embracing regulatory jurisdiction over the operations of public utilities. *See County of Chester v. Phila. Elec. Co.; Duquesne Light Co. v. Upper St. Clair Twp.* "If each [local government] were to pronounce its own regulation and control over electric wires, pipelines and oil lines, the conveyors of power and fuel could become so twisted and knotted as to adversely affect the welfare of the entire state." *County of Chester,* 420 Pa. at 425, 218 A.2d at 333. "It is for that reason that the [l]egislature has vested in the [PUC] *exclusive authority over the complex and technical service* and engineering questions arising in the location, construction *and maintenance of all public utilities facilities." Id.* at 426, 218 A.2d at 333 (emphasis added). "The provisions of the [Public Utility Code,] together with accompanying regulations of the [PUC], have designed and developed the machinery which standardizes the construction, operation and services of public utilities throughout Pennsylvania." *Id.*

Specifically, as to vegetation management, PECO and the PUC assert existing provisions of the Public Utility Code authorize the PUC to set standards for maintenance of electric service transmission and distributions systems. They cite, among other statutes, 66 Pa.C.S. § 2802(20), added as part of Chapter 28 of the Public Utility Code (Electricity Generation Customer Choice and Competition Act).[10] Section 2802(20) provides:

> Since continuing and ensuring the reliability of electric service depends on adequate generation and on conscientious inspection and maintenance of transmission and distribution systems, the independent system operator or its functional equivalent should set, and the

---

9. Section 302(d) of the Act of December 21, 1988, P.L. 1444, repealed Section 18 to the extent it conflicts with 15 Pa.C.S. § 1511. *See* 53 P.S. § 1991 (Note).

10. 66 Pa.C.S. §§ 2801–2812.

commission shall set through regulations, inspection, maintenance, repair and replacement standards and enforce those standards.

Further, in April 2006, the PUC issued a Proposed Rulemaking Order for "Revision of 52 Pa.Code Chapter 57 pertaining to adding Inspection and Maintenance Standards for the Electric Distribution Companies." *See* PUC Dkt. No. L–00040167; R.R. at 691a–720a. The proposed regulations require electric distribution companies to develop inspection and maintenance plans for "poles, overhead conductors, and cables, wires, transformers, switching devices, protective devices, regulators, capacitors, substations and other facilities critical to maintaining an acceptable level of reliability, in a format the [PUC] prescribes." *Proposed* 52 Pa.Code § 57.198(a); R.R. at 718a (emphasis deleted).

The proposed regulations also require electric utilities to develop vegetation maintenance plans. Specifically, *Proposed* 52 Pa.Code § 57.198(a)(3), R.R. at 719a (emphasis deleted), provides:

> The plan shall include a program for the maintenance of minimum clearances of vegetation from the EDC's overhead transmission and distribution facilities sufficient to avoid contact under design-based conditions. The plan shall include a program for the trimming of trees branches and limbs located in close proximity to overhead electric wires when the branches and limbs may cause damage to the electric wires regardless of whether the trees in question are on or off a right-of-way.

These plans, and subsequent revisions, must be accepted by the PUC. *Proposed* 52 Pa.Code § 57.198(b), (c). R.R. at 719a. Additionally, the proposed regulations require minimum vegetation management "treatment cycles" of four years for distribution facilities and five years for transmission facilities. *Proposed* 52 Pa.Code § 57.198(e)(1); R.R. at 720a.

In addition to the proposed regulations which will occupy the field of utility vegetation management, the PUC's existing electric safety and reliability regulations require electric distribution companies to operate and maintain their transmission facilities "in conformity with the applicable requirements of the National Electric Safety Code [ (NESC)]." 52 Pa.Code § 57.193(a). The NESC requires an electric provider to trim or remove trees that may interfere with electric lines. *See* NESC § 218.A.1.

 Moreover, as PECO and the PUC point out, PECO's Tariff currently provides, "[i]n accordance with the requirements set forth in the [NESC], [PECO] shall have the right to trim, remove, or separate trees, vegetation or any structures therein which, in the opinion of [PECO], interfere with its aerial conductors, such that they may pose a threat to public safety or to system reliability." PECO Elec. Serv. Tariff Rule 10.9; R.R. at. 582a. "It is well settled that public utility tariffs must be applied consistently with their language." *PPL Elec. Utils. Corp. v. Pa. Pub. Util. Comm'n,* 912 A.2d 386, 402 (Pa.Cmwlth.2006). "Public utility tariffs have the force and effect of law, and are binding on the customer as well as the utility." *Id.*

 Citing the above authority, PECO and the PUC assert the legislature, through the Public Utility Code, preempted any local regulation of electric public utilities' facilities and services, including vegetation management along power lines.

 We agree with the positions advanced by PECO and the PUC. First, we conclude public utility service embraces vegetation management. The PUC has

full authority to enforce the provisions of the Public Utility Code. *W. Penn Power.* Certain acts, done while rendering utility service, fall within the ambit of the PUC's jurisdiction under 66 Pa.C.S. § 1501 over character of utility service. *See W. Penn Power,* 578 A.2d at 77. In particular, vegetation management activities by an electric utility fall within the Public Utility Code's definition of service in 66 Pa.C.S. § 102. *Id.* Utility service "is not confined to the distribution of electrical energy, but includes 'any and all acts' related to that function." *Id.* (citing 66 Pa.C.S. § 102). *See also Popowsky,* 653 A.2d at 1389 ("utility's maintenance of vegetation is a regulated service even though fault, either on the part of the utility or the customer, has no relevance to the existence of vegetation maintenance as a service.")

■ Second, we conclude the legislature intended the Public Utility Code to preempt the field of public utility regulation. In *Duff v. Township of Northampton,* 110 Pa.Cmwlth. 277, 532 A.2d 500, 505 (1987), *aff'd per curiam,* 520 Pa. 79, 550 A.2d 1319. 520 Pa. 79, 550 A.2d 1319 (1988), we identified a five-pronged inquiry for determining whether a state statute preempts local regulation in the same field:

> (1) Does the ordinance conflict with the state law, either because of conflicting policies or operational effect, that is, does the ordinance forbid what the legislature has permitted? (2) Was the state law intended expressly or impliedly to be exclusive in the field? (3) Does the subject matter reflect a need for uniformity? (4) Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation? (5) Does the ordinance stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the legislature?

Here, all five prongs of the *Duff* test are met as to Appellants' attempted regulation of public utilities' vegetation management activities. Appellants' shade tree ordinance conflicts with PECO's existing Tariff Rule 10.9 and the PUC's electric safety and reliability regulations at 52 Pa.Code §§ 57.191–95. In addition, the PUC's proposed inspection and maintenance regulations directly conflict with Appellants' shade tree ordinance. As discussed above, the legislature intended the PUC be the sole regulator of public utilities' facilities and services. *County of Chester; Duquesne Light.* This applies to vegetation management by electric utilities. *W. Penn Power.*

Therefore, we hold Appellants are preempted by the Public Utility Code and PUC regulations from applying the Township's shade tree ordinance pruning standards to PECO's vegetation management practices. *Duquesne Light; W. Penn Power.*

## II. Purported Exceptions to PUC Jurisdiction

Appellants also claim express statutory exceptions to the PUC's general regulatory jurisdiction allowing the Township to regulate trimming of municipal shade trees.

### A. FCTC

■ First, Appellants assert the Township lawfully enacted the shade tree ordinances under Sections 3020–3031 of the FCTC, 53 P.S. §§ 58020–58031. Section 3023 of the FCTC provides township STCs with "exclusive custody and control of shade trees" and authorizes STCs to "plant, remove, maintain, and protect shade trees on the public streets and highways in the township." 53 P.S. § 58023. Thus, Appellants maintain, the FCTC provides the Township with authority to regu-

late how public utilities trim shade trees in its public right-of-ways. We disagree.

 As the trial court determined, the FCTC does not provide any express or implied authority for the Township to regulate utility practices. Also, Section 3502 of the FCTC provides the FCTC "shall not modify or repeal any of the provisions of the [Public Utility Code]." 53 P.S. § 58502. "As a creature of the Commonwealth, a township has no inherent powers and may do only those things which the legislature permits." *L. Merion Fraternal Order of Police Lodge Number Twenty–Eight v. Twp. of L. Merion*, 511 Pa. 186, 192, 512 A.2d 612, 615 (1986). "As such, the legislature has enacted the [FCTC,] which enumerates the powers of a [f]irst [c]lass [t]ownship." *Id.* Further, "a municipality ordinarily lacks the power to enact ordinances except as authorized by statute, and any ordinance not in conformity with its enabling statute is void." *City of Phila. v. Schweiker*, 579 Pa. 591, 605, 858 A.2d 75, 84 (2004).

Moreover, in *Duquesne Light*, 377 Pa. at 336, 105 A.2d at 293, the Supreme Court recognized the FCTC provided no express or implied authority to regulate public utilities:

> [T]he General Assembly entrusted the regulation of public utilities to a commission of statewide jurisdiction. Local authorities not only are ill-equipped to comprehend the needs of the public beyond their jurisdiction, but, and equally important, those authorities, if they had the power to regulate, necessarily would

exercise that power with an eye toward the local situation and not with the best interests of the public at large as the point of reference. We believe that the General Assembly never intended to bestow a power upon first class townships which is in headlong conflict with the power already given the [PUC].

We discern no error in the trial court's holding that the rationale in *Duquesne Light* is applicable here. We also agree that nothing in the FCTC's shade tree provisions repeals or modifies the Public Utility Code or grants Appellants the power to regulate a public utility's services, including its vegetation management practices. 53 P.S. § 58502.

In addition, it is possible to give effect to provisions of both the Public Utility Code and the FCTC. Thus, a public utility may arrange its vegetation management program at such intervals as will allow a township a reasonable first opportunity to maintain shade trees according to its pruning standards *before* a utility needs to do so.

## B. Section 18 of the 1911 Act, 53 P.S. § 1991

 Appellants next argue that Section 18 of the 1911 Act,[11] a general municipal statute governing use of streets by public utilities, authorizes the Township to require PECO to obtain a permit to occupy a public right-of-way. Section 18, Appellants assert, is a clear statutory exception to the general regulatory powers of the PUC. They contend the manner in which PECO occupies Township streets

---

11. Section 18 of the 1911 Act, 53 P.S. § 1991, provides:

> The proper corporate authorities of such municipality shall have the right to issue permits determining the manner in which public service corporations or individuals shall place, on or under or over such municipal streets or alleys, railway tracks, pipes, conduits, telegraph lines, or other devices used in the furtherance of business; and nothing herein contained should be construed to in any way affect or impair the rights, powers, and privileges of the municipality in, on, under, over, or through the public streets or alleys of such municipalities, except as herein provided.

includes the manner in which PECO's facilities co-occupy Township streets with shade trees. Thus, Appellants maintain, Section 18 of the 1911 Act provides express authority for municipal regulatory jurisdiction over Township streets.

PECO responds that nothing in Section 18 of the 1911 Act expressly authorizes first class townships to regulate public utilities' activities. PECO contends this statute pertains to the initial placement of utility facilities requiring excavation and restoration of public streets. This relates to preserving the integrity of the roadway; nothing in Section 18 expressly mentions regulation of public utilities' vegetation management practices. We agree.

As the trial court correctly determined, Section 18 is, on its face, inapplicable to the regulation of vegetation management. Rather, Section 18 governs the construction or placement of utility facilities on, under, or over public streets. It provides no express authority to municipalities to regulate public utilities' vegetation management practices.

Moreover, Section 3502 the FCTC preempts other legislative acts covering the same subject matter. 53 P.S. § 58502. Thus, even if Section 18 of the 1911 Act addressed shade trees, the FCTC would preempt it. The Public Utility Code, in turn, preempts the FCTC as to regulation of public utilities. *Duquesne Light; see also Commonwealth v. Del. and Hudson R. Co.*, 19 Pa.Cmwlth. 59, 339 A.2d 155, 157 (1975) (the "clear intent of *Duquesne* . . . is to uphold the proposition that public utilities are to be regulated exclusively by an agency of the Commonwealth with state-wide jurisdiction rather than by a myriad of local governments with different regulations").

## C. 15 Pa.C.S. § 1511(e).

Appellants next argue 15 Pa.C.S. § 1511(e) requires PECO to comply with Township tree trimming permit requirements. Generally, Section 1511 of the BCL, 15 Pa.C.S. § 1511, titled "[a]dditional powers of public utility corporations," provides public utilities with eminent domain powers, subject to PUC approval, to take, occupy and condemn property as necessary to accomplish their principal purpose of providing utility service. Section 1511(e), 15 Pa.C.S. § 1511(e), pertaining to public ways, provides (with emphasis added):

**(e) Streets and other public places.—** A public utility corporation shall have the right to enter upon and occupy streets, highways, waters and other public ways and places for one or more of the principal purposes specified in subsection (a) and ancillary purposes reasonably necessary or appropriate for the accomplishment of the principal purposes, including the placement, maintenance and removal of aerial, surface and subsurface public utility facilities thereon or therein. *Before entering upon any street, highway or other public way, the public utility corporation shall obtain such permits as may be required by law and shall comply with the lawful and reasonable regulations of the governmental authority having responsibility for the maintenance thereof.*

Appellants contend this provision authorizes the Township to require a public utility to obtain a permit before occupying a public right-of-way to perform maintenance on its facilities and to submit to reasonable municipal regulations concerning the maintenance of those facilities.

PECO and the PUC respond that nothing in 15 Pa.C.S. § 1511(e) expressly grants municipalities the power to regulate an electric utility's tree trimming activities in a public right-of-way. Rather, Section 1511(e) is a grant of power to public utili-

ties, not a limitation as Appellants argue. Section 1511(e)'s last sentence, PECO and the PUC argue, does not abrogate the body of law conclusively establishing the preemptive effect of the Public Utility Code. Instead, as stated in the 1990 Committee Comment to 15 Pa.C.S. § 1511, the reference to permits in the last sentence of subsection (e) "is a codification of the prior law relating to the time and manner of opening a street...."[12] They thus contend the underlying purpose of 15 Pa.C.S. § 1511(e), and its predecessor, Section 18 of the 1911 Act, 53 P.S. § 1991, is to control street construction and restore the streets to a safe condition. These provisions are not intended to protect municipal trees.

◼ PECO and the PUC further assert Appellants' shade tree ordinance, as applied to public utilities, conflicts with the Public Utility Code and is thus neither a lawful nor a reasonable regulation as applied to public utilities. In short, PECO and the PUC argue, Section 1511(e) does not grant any powers to municipalities; the Township derives its regulatory authority from the FCTC and the Pennsylvania Municipalities Planning Code (MPC).[13] Neither the FCTC nor the MPC authorizes municipal regulation of public utility services. *Duquesne Light; Newtown Twp. v. Phila. Elec. Co.* We agree.

As the trial court concluded, 15 Pa.C.S. § 1511(e) is not an exception to PUC jurisdiction. The provision does not grant the Township additional regulatory powers. Rather, the Township's authority springs from the FCTC, which does not modify or repeal the Public Utility Code in any manner. As discussed above at length, municipal pruning standards unlawfully infringe

on the PUC's regulation of a utility service and an electric utility's obligation to provide safe and reliable electric service. *W. Penn Power.*

### III. Statutory Construction

Appellants also assert the Public Utility Code provides only a general grant of power to regulate public utility service. It does not specifically grant the PUC exclusive power to regulate vegetation management activities within public rights-of-way. Appellants again assert 15 Pa.C.S. § 1511(e) requires a public utility to obtain a permit and comply with lawful and reasonable regulations of the municipality responsible for maintaining the right-of-way.

Citing Section 1933 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1933, Appellants argue that where a general provision conflicts with a specific provision, the two shall be construed to give effect to both. Moreover, where the conflict is irreconcilable, the specific provision must prevail. *Id.* Under either interpretation, Appellants maintain, public utilities must comply with the Township's lawful and reasonable permitting requirements for tree trimming.

◼ As discussed above, the Public Utility Code gives the PUC the sole power to regulate utility services, which include vegetation management. *Duquesne Light; W. Penn Power.* Nothing in 15 Pa. C.S. § 1511(e) expressly authorizes the Township to regulate a utility's vegetation management practices. Rather, the Township's regulatory power over shade trees is derived solely from the FCTC, which does not repeal or modify the Public Utility Code. Therefore, Appellants' statutory construction argument fails.

---

**12.** *See* Purdons Pa. Consol. Statutes Ann., 15 Pa. C.S §§ 101–2100 (Corp. & Unincorp. Ass'ns), at p. 196.

**13.** Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202.

Further, it is possible to give effect to both the Public Utility Code and to 15 Pa.C.S. § 1511(e). A public utility may be required to obtain a routine township permit and to notify a township of its intended activities. However, permits conditioned on a township's evaluation of necessity and township management of the details of public notification and utility activities, as embodied in Township's shade tree ordinance here, are not lawful or reasonable regulations.

## IV. Property Rights

Appellants further argue the Township has a property right to the trees within public right-of-ways. Pursuant to Section 3023 of the FCTC, 53 P.S. § 58023, the Township has the right to plant, maintain and protect shade trees on public streets. Appellants also assert, if a tree damaged by PECO injures someone or damages property, the Township could be responsible under the tree exception to governmental immunity. *See* 42 Pa.C.S. § 8542(b)(4) (municipal liability for dangerous conditions of trees, traffic control and street lighting). Therefore, Appellants again argue, PECO must obtain the Township's permission to trim shade trees in public rights-of-way.

For the reasons stated above, 15 Pa.C.S. § 1511(e) does not expressly authorize the Township to regulate PECO's tree trimming activities. Thus, Section 1511(e) does not modify PUC regulation of "utility service." Vegetation management is an essential part of providing safe, reliable electric service and is squarely within the PUC's regulatory jurisdiction. Also, as the trial court emphasized, the FCTC is the sole enabling statute governing a first class township's authority to regulate shade trees. Section 3502 of the FCTC, 53 P.S. § 58502, expressly states nothing in the FCTC repeals or modifies the Public Utility Code.

Moreover, 66 Pa.C.S. § 701 authorizes any person, corporation or municipal corporation to file a written complaint regarding any act by a public utility in violation of the Public Utility Code or PUC regulation. The PUC has the power to investigate public utilities, hold hearings and grant declaratory relief to terminate a controversy or remove uncertainty. 66 Pa. C.S. § 331. Therefore, the PUC is the appropriate forum for complaints related to PECO's tree trimming practices. *Newtown Twp.* In fact, in *West Penn Power*, we recognized 66 Pa.C.S. § 1501 requires an electric utility perform vegetation maintenance in a reasonable, safe and efficient manner. As a result, Appellants have an adequate forum to contest PECO's tree trimming activities.

Finally, nothing in the cited statutes prevents the Township from trimming its shade trees in any manner it wishes before a public utility does so. Indeed, various provisions of the FCTC authorize it to pay for shade tree maintenance and, in some circumstances, to pass the costs on to the adjoining landowner. *See* Sections 3024, 3027, 3027.1 [14] and 3029 of the FCTC, 53 P.S. §§ 58024, 58027, 58027.1, 58029. In this manner, the Township may protect itself from tree liability without relying on the public utility to protect it.

For all the foregoing reasons, we affirm.

### ORDER

AND NOW, this 1st day of May, 2007, the order of the Court of Common Pleas of Montgomery County is **AFFIRMED**.

---

14. Added by the Act of August 17, 1951, P.L. 1255.