# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

UGI Utilities, Inc., : 
:
          Petitioner : 
:
       v. : No. 499 M.D. 2015
: Submitted: August 11, 2017
City of Reading and Pennsylvania :
Public Utility Commission, :
:
         Respondents :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                 **FILED: November 21, 2017**

Petitioner UGI Utilities, Inc. (UGI) commenced this action in the Court's original jurisdiction on October 13, 2015, seeking a declaratory judgment that certain ordinances of Respondent City of Reading (City) are invalid and a permanent injunction barring the City from enforcing those ordinances. Count I of UGI's three-count amended petition for review asserts that City Ordinance No. 45-2015, which imposes restrictions on the location of gas meters in historic districts, is preempted by the Public Utility Code, 66 Pa. C.S. §§ 101-3316, and a regulation promulgated by the Pennsylvania Public Utility Commission (PUC) pursuant to its authority under the Public Utility Code. The matter before the Court is UGI's application for partial summary relief seeking a judgment in its favor on Count I of its amended petition for review declaring that Ordinance No. 45-2015 is invalid

and permanently enjoining the City from enforcing Ordinance No. 45-2015. For the reasons set forth below, we grant UGI's application for partial summary relief and enjoin the City from enforcing Ordinance No. 45-2015.

Rule 1532(b) of the Rules of Appellate Procedure provides that "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear." Pa. R.A.P. 1532(b). Summary relief may be granted if there are no genuine disputes of material fact and, viewing the evidence in the light most favorable to the nonmoving party, the movant's right to judgment in its favor is clear as a matter of law. *Hospital & Healthsystem Association of Pennsylvania v. Commonwealth*, 77 A.3d 587, 602 (Pa. 2013); *PPL Electric Utilities Corp. v. City of Lancaster*, 125 A.3d 837, 853 (Pa. Cmwlth. 2015) (*en banc*).

The underlying facts in this action are not in dispute. UGI is a public utility corporation and natural gas distribution company regulated by the PUC. (Amended Petition for Review ¶¶1, 5; City Answer ¶¶1, 5.) UGI provides natural gas service in the City and owns and operates underground natural gas distribution mains, service lines and other facilities in the City. (Amended Petition for Review ¶¶8, 9; City Answer ¶¶8, 9.)

In 2014, the PUC amended its regulation governing gas meter location, 52 Pa. Code § 59.18. Amended 52 Pa. Code § 59.18 (PUC Regulation 59.18) requires that "[u]nless otherwise allowed or required in this section, meters and regulators must be located outside and aboveground" and "shall be installed … [w]hen feasible and practical to do so, aboveground in a protected location adjacent to the building served, or as close as possible to the point where a production or transmission line is tapped." 52 Pa. Code § 59.18(a)(1), (b)(1)

2

(emphasis added). The meter location requirements of PUC Regulation 59.18 are safety regulations imposed to reduce the dangers from gas leaks. Final Rulemaking Order, 44 Pa. B. 5835, 5835-36, 5838 (2014) (concluding that "[s]pecifying mandatory requirements for meter, regulator and service line locations is necessary to protect the safety of the public" and that "[w]hile it appears from the data that the inside meter and regulators were not always the primary factor for accidents, locating meters and regulators inside certainly contributed to these incidents through a release of natural gas"). PUC Regulation 59.18 also states that inside meter location "shall be considered" for buildings in historic districts, provided that the regulator and a shut-off valve are installed outside. 52 Pa. Code § 59.18(d)(1)(ii), (2), (3). UGI is required to comply with the restrictions on meter location in PUC Regulation 59.18 for new installations and "when replacing existing meters, regulators and service line facilities." 52 Pa. Code § 59.18(g)(1), (2). Utilities have until September 13, 2034 to bring other existing gas meters into compliance. 52 Pa. Code § 59.18(g)(3).

In August 2015, the City enacted Ordinance No. 45-2015, amending Chapter 295 of the City Code, Historical and Conservation Districts, to add regulations concerning the installation of gas meters in historic districts. Ordinance No. 45-2015 provides, *inter alia*:

> F. Placement of gas meters in historic districts.
>
> (1) Installation.
>
> (a) No gas meters shall be installed or placed in front yards, front of buildings or along their facades that can be seen from a public right-of-way within any historic district designated by City ordinance or listed in the National Register of Historic Places. Such gas meters shall be located inside the building, at an exterior location that is not visible from a public right-of-

3

way, or shall be installed within an exterior, below-grade vault that is covered by a flush, corrosion-resistant access hatch.

*       *       *

(2) Exceptions. Gas meters, as defined herein, may be installed in front yards, front of buildings, or along their facades that can be seen from a public right-of-way within historic districts only if no other means of gas service can be provided. In such cases where the proposed location of a gas meter is visible from a public right-of-way, the public utility shall seek the issuance of a certificate of appropriateness as required in § 295-107 of this chapter. Such gas meters shall be unobtrusive and shall be screened from view through the use of landscaping, fencing and/or architectural building features. The Building Inspector and Historic Preservation Specialist shall approve the installation to ensure there is no disruption to the historic nature and aesthetic value of the district.

(3) Removal. Any existing gas meter assembly installed in front yards, front of buildings or along their facades that can be seen from a public right-of-way within historic districts before the enactment of this Section must be reviewed by the Historical Architectural Review Board to obtain a certificate of appropriateness as required per § 295-106 of this chapter within one year of the effective date of this chapter. The Historical Architectural Review Board may require removal and/or alterations to existing gas meter assemblies and adjacent construction to meet the requirements of this Section.

(4) Violations and penalty. Placement of any gas meter that does not conform to the guidelines of this section will constitute a violation and may be subject to penalty and enforcement per §295-122 and 295-123.

(Ordinance No. 45-2015) (emphasis added). In February 2016, after UGI commenced this action, the City filed a Complaint with the PUC contending, *inter alia*, that UGI is installing meters on the front exterior of buildings in its historic districts without consideration of indoor placement in violation of PUC Regulation

4

59.18 and seeking an order from the PUC setting standards for meter location in historic districts. That Complaint, PUC Docket No. C-2016-2530475, and a related Complaint filed by Centre Park Historic District, Inc., PUC Docket No. C-2015-2516051, with which it has been consolidated (collectively, the PUC Proceedings), are pending before a PUC administrative law judge (ALJ).

On April 19, 2017, UGI filed the instant application for partial summary relief.[1] In this application, UGI asserts that Ordinance No. 45-2015 is preempted both because it conflicts with PUC Regulation 59.18 and because it is barred by the PUC's exclusive authority over the location of public utility facilities. The City, in response, argues that Ordinance No. 45-2015 is consistent with and permitted by PUC Regulation 59.18. The City also contends that the question of whether UGI must comply with Ordinance No. 45-2015 is before the PUC in the PUC Proceedings and has requested that the Court defer ruling on UGI's application until the PUC rules in those proceedings.[2] UGI asserts that there is no basis to stay this matter because the PUC Proceedings involve only issues of whether UGI's meter relocations violate PUC Regulation 59.18 and will not address the question of whether Ordinance No. 45-2015 is preempted.

---

[1] On the same date, UGI also filed an application for a preliminary injunction enjoining the City from interfering with UGI's gas main and lateral replacement and gas meter relocation in the City's Centre Park Historic District (the Centre Park Project) and from enforcing Ordinance No. 45-2015 with respect to that project. The Court conducted evidentiary hearings on the Application for Preliminary Injunction on May 9 and 24, 2017. Based on the evidence from the two hearings, the Court issued an Order granting a preliminary injunction on May 25, 2017 enjoining the City from impeding and interfering with the Centre Park Project. By stipulation of the parties, this preliminary injunction was extended on September 6, 2017 to encompass other projects undertaken by UGI during the pendency of the PUC Proceedings.

[2] The PUC, also named by UGI as a respondent in this action as an affected party, did not file a response or brief with respect to UGI's application for partial summary relief.

5

We reject the City's request to delay ruling on the application for partial summary relief. The record in the PUC Proceedings demonstrates that those proceedings will not address whether Ordinance No. 45-2015 is preempted or can be enforced by the City against UGI. On August 28, 2017, the ALJ issued an Initial Decision on a motion for summary judgment filed by UGI in which she addressed the scope of the PUC Proceedings.[3] In that Initial Decision, the ALJ specifically ruled that the validity of the City's ordinances was not before the PUC. (PUC Proceedings 8/28/17 Initial Decision at 20, 22 n.38.) While the ALJ concluded that the existence of the local ordinance could be relevant to whether the utility's consideration of indoor gas meter placement was sufficient to satisfy its obligations under PUC Regulation 59.18, the ALJ specifically rejected the City's contentions that PUC Regulation 59.18 incorporated local ordinances requiring indoor placement of meters. (*Id.* at 19-22.) The issue of whether UGI's meter placements in the City's historic districts violated PUC Regulation 59.18 is still pending in the PUC Proceedings and those proceedings may clarify the obligations that a utility has under PUC Regulation 59.18 in historic districts. Neither of those matters, however, need be resolved for this Court to address whether Ordinance No. 45-2015 conflicts with PUC Regulation 59.18 and the Public Utility Code.

---

[3] Because of the conflicting assertions concerning the scope of the PUC Proceedings, the Court, on September 25, 2017, ordered UGI and the City to file reports advising the Court of the status of the PUC Proceedings and provide the Court with the most recent filings and decisions defining the issues that are before the PUC. The August 28, 2017 Initial Decision was provided to the Court by both parties in their status reports. This Court may properly take judicial notice of that decision in the PUC Proceedings in this case. *Grever v. Unemployment Compensation Board of Review*, 989 A.2d 400, 402 (Pa. Cmwlth. 2010); *C.J. v. Department of Public Welfare*, 960 A.2d 494, 497 n.8 (Pa. Cmwlth. 2008); *Lycoming County v. Pennsylvania Labor Relations Board*, 943 A.2d 333, 335 n.8 (Pa. Cmwlth. 2007).

Turning to the merits, we conclude that Ordinance No. 45-2015 is preempted by PUC Regulation 59.18 and the Public Utility Code. "Municipalities are creatures of the state and have no inherent powers of their own. Rather, they 'possess only such powers of government as are expressly granted to them and as are necessary to carry the same into effect.'" *Huntley & Huntley, Inc. v. Borough Council of Borough of Oakmont*, 964 A.2d 855, 862 (Pa. 2009) (quoting *City of Philadelphia v. Schweiker*, 858 A.2d 75 (Pa. 2004)); *UGI Utilities, Inc. v. City of Lancaster*, 125 A.3d 858, 863 (Pa. Cmwlth. 2015) (*en banc*) (quoting *Huntley & Huntley, Inc.*); *PPL Electric Utilities Corp.*, 125 A.3d at 844 (quoting *Huntley & Huntley, Inc.*). Even in those areas over which municipalities have been granted power to act, the state may preempt local legislation and regulation. *Hoffman Mining Company v. Zoning Hearing Board of Adams Township*, 32 A.3d 587, 593 (Pa. 2011); *Huntley & Huntley, Inc.*, 964 A.2d at 862; *UGI Utilities, Inc.*, 125 A.3d at 863; *PPL Electric Utilities Corp.*, 125 A.3d at 844.

State law preempts local ordinances in three situations: 1) where there is a preemption clause expressly restricting local regulation; 2) where the state law is intended to occupy the entire field and permit no local regulation; and 3) where the ordinance conflicts with state law either because compliance with both is impossible or because the ordinance stands as an obstacle to the execution of the full purposes of the state law. *Hoffman Mining Co.*, 32 A.3d at 593-94; *Holt's Cigar Co. v. City of Philadelphia*, 10 A.3d 902, 907 (Pa. 2011); *UGI Utilities, Inc.*, 125 A.3d at 863-64; *PPL Electric Utilities Corp.*, 125 A.3d at 844. Preemption is not limited to state statutes; both state statutes and state regulations may preempt local ordinances. *Huntley & Huntley, Inc.*, 964 A.2d at 862; *Aboud v. City of Pittsburgh Department of Planning*, 17 A.3d 455, 462 (Pa. Cmwlth. 2011);

7

*Liverpool Township v. Stephens*, 900 A.2d 1030, 1037 (Pa. Cmwlth. 2006) (*en banc*). "[L]ocal legislation cannot permit what a state statute or regulation forbids or prohibit what state enactments allow." *Huntley & Huntley, Inc.*, 964 A.2d at 862.

The law is well established that the Public Utility Code vests exclusive authority over the regulation of public utility facilities in the PUC. *County of Chester v. Philadelphia Electric Co.*, 218 A.2d 331, 332-33 (Pa. 1966); *Duquesne Light Co. v. Upper St. Clair Township*, 105 A.2d 287, 291-93 (Pa. 1954); *PPL Electric Utilities Corp*, 125 A.3d at 844-51; *Pennsylvania Power Co. v. Township of Pine*, 926 A.2d 1241, 1249-53 (Pa. Cmwlth. 2007); *PECO Energy Co. v. Township of Upper Dublin*, 922 A.2d 996, 1005 (Pa. Cmwlth. 2007). "[T]he Legislature has vested in the Public Utility Commission exclusive authority over the complex and technical service and engineering questions arising in the location, construction and maintenance of all public utilities facilities." *County of Chester*, 218 A.2d at 333; *PPL Electric Utilities Corp.*, 125 A.3d at 846 (quoting *County of Chester*).

Local ordinances that conflict with PUC regulations or orders are preempted and cannot be applied to the regulated utility. *PECO Energy Co.*, 922 A.2d at 1005 (township shade tree ordinance that limited tree pruning was preempted where it conflicted with PUC requirements concerning vegetation management near power lines); *see also Duquesne Light Co.*, 105 A.2d at 292-93 (enjoining enforcement of zoning ordinance against construction of electrical transmission lines approved by the PUC). In addition, local ordinances that regulate the location of utility lines are preempted by the Public Utility Code where the PUC has regulated the location of those lines, even if the ordinances do not

8

conflict with specific PUC regulations or orders. *County of Chester*, 218 A.2d at 332-33; *UGI Utilities, Inc.*, 125 A.3d at 864-65; *PPL Electric Utilities Corp.*, 125 A.3d at 849-53.

Here, Ordinance No. 45-2015 conflicts with PUC Regulation 59.18. PUC Regulation 59.18 requires that all gas meters be installed outdoors and aboveground "[u]nless otherwise allowed or required" in that regulation. 52 Pa. Code § 59.18(a)(1). PUC Regulation 59.18 does not require or direct that gas meters in historic districts must be installed indoors, but provides only that "[i]nside meter locations shall be considered" by the utility in such districts. 52 Pa. Code § 59.18(d)(1)(ii) (emphasis added). Indeed, the PUC in promulgating this regulation made clear that utilities are not required to install gas meters indoors in historic districts and that the decision whether to install a meter indoors involves an exercise of discretion by the utility, noting that "it is necessary that, due to its public safety obligations, the utility be allowed to make the final decision." Final Rulemaking Order, 44 Pa. B. at 5848. Ordinance No. 45-2015, in contrast, imposes an absolute prohibition on outdoor, aboveground installation of gas meters where the only available outdoor location is in a front yard or façade visible from the street unless "no other means of gas service can be provided." (Ordinance No. 45-2015 § F(1)(a), (2)). Such a restriction is directly contrary to the discretion that the PUC conferred on utilities to determine whether safety permits an indoor location. Therefore, Ordinance No. 45-2015 stands as an obstacle to the execution of the full purposes of PUC Regulation 59.18 and is preempted. *See Holt's Cigar Co.*, 10 A.3d at 913-14 (ordinance preempted where it prohibited sales of certain items regardless of sellers' knowledge where state required proof of seller *mens rea* because ordinance conflicted with state purpose to protect innocent sellers);

9

*Cellucci v. General Motors Corp.*, 706 A.2d 806, 809-12 (Pa. 1998) (requirement that manufacturer use one of three compliance options permitted by federal regulation conflicted with federal purpose to give manufacturers flexibility of choosing the method of compliance).

Moreover, Ordinance No. 45-2015 is preempted even if its absolute prohibition can be reconciled with PUC Regulation 59.18. The PUC, in PUC Regulation 59.18, regulates the locations at which utilities may install gas meters. Ordinance No. 45-2015 does not merely impose historic district requirements of general applicability on utilities. It specifically regulates the very same subject regulated by the PUC, the location of gas meters, and provides for local enforcement of its restrictions by orders that gas meters be removed or altered and by imposition of penalties. Such regulation of the location of utility facilities is preempted by the PUC's exclusive authority regardless of whether it conflicts with any specific PUC regulations or orders. *County of Chester*, 218 A.2d at 332-33 (invalidating ordinance requiring utilities constructing pipelines in county to submit plans and specifications to the county planning commission before construction); *UGI Utilities, Inc.*, 125 A.3d at 864-65 (ordinance sections that required utility to submit maps and engineering specifications to city were preempted because they "allow the City to become a regulator itself" in contravention of the PUC's exclusive jurisdiction); *PPL Electric Utilities Corp.*, 125 A.3d at 849-53 (ordinance sections that provided for city inspection of utility facilities, for city orders to relocate utility facilities and for city enforcement of PUC regulations were preempted because each of those provisions "makes the City a regulator itself" in contravention of the PUC's exclusive jurisdiction); *Township*

10

*of Pine*, 926 A.2d at 1249-53 (township was preempted from enforcing PUC regulation concerning underground location of electric transmission lines).

The City argues that preemption does not apply because PUC Regulation 59.18 recognized the existence of local historic district ordinances. This argument is without merit. Nothing in the PUC's rulemaking authorized or validated the type of regulation of gas meter location that Ordinance No. 45-2015 imposes. The local regulation of historic districts acknowledged and discussed by the PUC in promulgating PUC Regulation 59.18 consists of ordinances of general application regulating construction in historic districts, not ordinances directed specifically at regulating utilities or imposing specific restrictions on the location of gas meters. *See* Final Rulemaking Order, 44 Pa. B. at 5837-38, 5842-43, 5847. Moreover, the PUC did not make any determination that historic district ordinances are necessarily valid and enforceable against utilities. To the contrary, the PUC specifically noted that "[s]uch municipal laws may not be enforceable against public utilities due to the Commission's exclusive jurisdiction of utilities under the Public Utility Code." *Id.* at 5837 n.5.

The City also argues that preemption does not apply because the location of meters in historic districts implicates its protection of historic resources under Article 1, Section 27 of the Pennsylvania Constitution. This argument likewise fails. Article 1, Section 27 of the Pennsylvania Constitution provides:

> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

11

Pa. Const. art. 1, § 27. The issue here, however, is not the importance or legitimacy of the City's purpose, but whether it has been preempted by the state. Article 1, Section 27 does not immunize local regulation from preemption. *See Range Resources-Appalachia, LLC v. Salem Township*, 964 A.2d 869, 873, 875-77 (Pa. 2009) (ordinance regulating oil and gas operations was preempted by state law even though ordinance was enacted to carry out municipality's environmental protection obligations under Article 1, Section 27); *PECO Energy Co.*, 922 A.2d at 999, 1005 (ordinance that was preempted by PUC requirements protected environmental quality by limiting the cutting, trimming and removal of trees in the public right of way).

Article 1, Section 27 can bar preemption of local regulation where the state statute or regulation on which preemption is based so completely removes environmental protections that it violates the state's duties under that constitutional provision. *See Robinson Township v. Commonwealth*, 83 A.3d 901, 969-85 (Pa. 2013) (plurality opinion) (striking down "unprecedented" state law that barred all local zoning and environmental protection regulation on the grounds that the state law violated Article 1, Section 27). The reason that preemption fails in such a case is that the preempting state law itself is unconstitutional. That situation is not present here. The City does not claim that PUC Regulation 59.18 violates Article 1, Section 27 or is unconstitutional in any respect. Nor is there are any basis on which a court could conclude that the PUC's safety regulation of gas meters violates Article 1, Section 27 of the Pennsylvania Constitution, as it in fact takes into account the interest in protection of historic resources by providing for consideration of indoor meter placement in historic districts. 52 Pa. Code § 59.18(d)(ii).

Because the undisputed facts demonstrate that Ordinance No. 45-2015 is preempted by PUC Regulation 59.18 and the Public Utility Code, the Court grants UGI's application for partial summary relief and enters judgment in its favor with respect to Count I of its amended petition for review. The City is specifically enjoined from enforcing Ordinance No. 45-2015.

_____
JAMES GARDNER COLINS, Senior Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| UGI Utilities, Inc., | : |
| | : |
| Petitioner | : |
| | : |
| v. | : No. 499 M.D. 2015 |
| | : |
| City of Reading and Pennsylvania | : |
| Public Utility Commission, | : |
| | : |
| Respondents | : |

## **O R D E R**

AND NOW, this 21st day of November, 2017, upon consideration of Petitioner's application for partial summary relief and the briefs of Petitioner and Respondent City of Reading (City) with respect thereto, it is ORDERED that said application is GRANTED. The Court hereby DECLARES that City Ordinance No. 45-2015 is PREEMPTED by the Public Utility Code and 52 Pa. Code § 59.18, and ENJOINS the City from enforcing Ordinance No. 45-2015.

_____
**JAMES GARDNER COLINS, Senior Judge**