# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stacy L. Garrity,                              :
in her official capacity as the                :
Treasurer of the Commonwealth,                 :
          Plaintiff                          :    No.  272 M.D. 2019
                                             :
          v.                                 :    Argued:  June 23, 2022
                                             :
PPL Corporation,                               :
          Defendant                          :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE LORI A. DUMAS, Judge

OPINION BY JUDGE McCULLOUGH          FILED: June 23, 2023

Presently before the Court in our original jurisdiction is the application for partial summary relief in the nature of a motion for judgment on pleadings (Application) filed by Plaintiff, Stacy L. Garrity, in her official capacity as the Treasurer of the Commonwealth (Treasurer), in connection with a complaint against defendant PPL Corporation (PPL). Through the Application, Treasurer seeks a determination from this Court declaring, as a matter of law, that Treasurer, in performing an audit of the records of an unclaimed securities property holder (here, PPL), has the statutory authority under Article XIII.1 of The Fiscal Code, known as the Disposition of Abandoned and Unclaimed Property Act (DAUPA),[1] and Article XVI

---

[1] Article XIII.1 was added to The Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended*, 72 P.S. §§ 1-1805, by section 5 of the Act of December 9, 1982, P.L. 1057, 72 P.S. §§ 1301.1-1301.29.

of The Fiscal Code, 72 P.S. §§ 1601-1602, to: (1) direct a holder's[2] production of shareholder records in electronic format; (2) perform accuracy tests and cross-checks to verify the accuracy of records produced by a holder; and, further, (3) utilize this statutory power despite PPL's claim that it is preempted by federal law. In addition, Treasurer requests that the Court dismiss PPL's Fourth, Fifth, and Sixth New Matters in their entirety, which, in notable part, are inexorably intertwined with Treasurer's above-mentioned requests for determinations as a matter of law.

Upon review, we grant Treasurer's Application, with specific qualifications, as more fully set forth below.

## I.     Factual and Procedural History

The factual and procedural history of this case has been thoroughly detailed in our previous decision, *Torsella v. PPL Corporation* (Pa. Cmwlth., No. 272 M.D. 2019, filed July 20, 2021) (*en banc*) (unreported),[3] and is incorporated herein by reference. Briefly, Treasurer filed a complaint asking this Court to order PPL to produce information and documents that Treasurer requested from PPL in a March 13, 2019 subpoena (Subpoena), contending that the information and documents that PPL submitted did not fully comply with the request,

> by producing heavily edited, redacted, and incomplete records concerning PPL's shareholders and by proposing **an onsite visual view of PPL's unredacted, unedited original data that spans 1,000 or more pages, at PPL's offices,**

---

[2] DAUPA defines "holder" in relevant part, as "a person obligated to hold for the account of or delivery or pay to the owner property which is subject to this article and shall include any person in possession of property subject to this article belonging to another . . . ." Section 1301.1 of DAUPA, 72 P.S. § 1301.1.

[3] At the time the complaint was filed, Joseph M. Torsella was the Treasurer. Subsequently, Stacy Garrity was elected Treasurer at the November 3, 2020 general election and was sworn into office on January 19, 2021.

> **using a PPL computer terminal and the limited software that PPL intended to make available**. According to Treasurer, instead of producing copies of its original data, which includes names, addresses and related information and which PPL possesses in readily-transferable format, PPL created new documents that replaced the name and other identifying information associated with an account with an ACCTKEY placeholder. PPL also withheld information that PPL believed related to individual shareholders with addresses in states that are not participating in the audit. Given how PPL produced the requested data, Kelmar[ Associates, Treasurer's designee to conduct, on Treasurer's behalf, an unclaimed property audit of PPL's shareholder records,] was unable to run analytics to cross-check the accuracy of PPL's data.

*Id.*, slip op. at 8 (internal citations, quotation marks, and alterations omitted; emphasis added).

On July 1, 2020, PPL filed revised preliminary objections to the complaint, asserting that the complaint was legally deficient on a variety of grounds. "PPL first argue[d] that Treasurer does not have the authority to compel PPL to produce its shareholders' [personally identifiable information (PII)], and it has already fully complied with DAUPA by producing electronic records having some of the data Treasurer requested, and by allowing Treasurer to review the full records, including PII, at PPL's corporate office." *Torsella*, slip op. at 11. "Second, PPL contend[ed] that the law does not entitle Treasurer to verify the accuracy of PPL's shareholder records using software analytics." *Id.* "Third, PPL submit[ted] that Treasurer is attempting, through [her] [c]omplaint, to enforce the Subpoena, but the Subpoena is improper because it is not limited in scope and specific in directive so that compliance will not be unreasonably burdensome, as electronically producing its shareholders' PII exposes those shareholders to needless risk." *Id.* at 11-12.

3

In *Torsella*, a five-judge, *en banc* panel of this Court overruled PPL's preliminary objections, addressing three issues: (1) "[w]hether Treasurer has [f]ailed to [s]tate a [c]laim [b]ecause Treasurer is not [a]uthorized to [c]ompel the [e]lectronic [p]roduction of PPL's [s]hareholder [r]ecords"; (2) "[w]hether Treasurer has [f]ailed to [s]tate a [c]laim [b]ecause Treasurer is not [a]uthorized to [v]erify the [a]ccuracy of PPL's [s]hareholder [r]ecords [u]sing [s]oftware [a]nalytics"; and (3) "[w]hether Treasurer has [f]ailed to [s]tate a [c]laim [b]ecause Treasurer may not [c]ompel PPL to [p]roduce its [s]hareholders' PII." *See id.*, slip op. at 12, 20, and 28.

With regard to the first issue, this Court cited what we referred to as "DAUPA's Examination Provisions," 72 P.S. § 1301.23(b)-(c),[4] and "The Fiscal Code's Examination and Adjustment Provision," 72 P.S. § 1602(a). Based on the plain language of these statutes, and reading them *in pari materia*, we concluded that they

---

[4] This provision, in relevant part, reads as follows:

> (b) . . . Treasurer, at reasonable times and upon reasonable notice, may **examine** the records of any person or agent thereof to determine whether the person has complied with this article. The administrator may conduct the **examination** even if the person believes it is not in possession of any property that must be reported, paid or delivered under this article . . . . Treasurer may contract with any other person to conduct the examination on behalf of . . . Treasurer, the selection of whom shall not be questioned.

> (c) . . . Treasurer at reasonable times may **examine** the records of an agent, including a dividend disbursing agent or transfer agent, of a business association or financial association that is the holder of property presumed abandoned if the administrator has given the notice required by subsection (b) to both the association or organization and the agent at least 90 days before the **examination**.

Section 1301.23(b)-(c) of DAUPA, 72 P.S. § 1301.23(b)-(c) (emphasis added). Pursuant to subsection (d), any work papers that Treasurer has "obtained or compiled" during the course of an examination "are confidential and are not public records . . . ." 72 P.S. § 1301.23(d).

"empower[] Treasurer to **examine** PPL's shareholder records" and "clearly give[] Treasurer the **power to compel** the exhibition or delivery of records . . . ." *Torsella*, slip op. at 18-19 (emphasis in original). Moreover, finding Treasurer's "interpretation of the statutory language [] persuasive," this Court concluded that The Fiscal Code's Examination and Adjustment Provision authorized Treasurer to compel PPL to produce the records to Treasurer in electronic format. *Id.*, slip op. at 19.

Concerning the second issue, this Court determined, in general, that "PPL may not refuse to produce unredacted documents because **it believes** those documents do not contain information on assets reportable to Pennsylvania." *Id.*, slip op. at 23 (emphasis in original; internal quotation marks omitted). We further rejected PPL's contention "that Treasurer may not use software analytics to verify PPL's shareholder data and [that] Treasurer's Subpoena is overbroad, as PPL has already produced to Treasurer all the information necessary to complete its audit." *Id.*, slip op. at 25. In so doing, this Court stated:

> [T]he plain language of DAUPA and The Fiscal Code recognizes that a holder's records may not be accurate and thus Treasurer may examine and revise them as necessary. *See* 72 P.S. § 1301.23(a) (stating a holder's report may be inaccurate, false, and/or incomplete). Moreover, The Fiscal Code's Examination and Adjustment Provision authorizes Treasurer to "examine and revise" unclaimed property accounts. 72 P.S. § 1602(a). These provisions support that Treasurer is authorized to verify the accuracy of a holder's unclaimed property records.

*Id.*, slip op. at 25-26. In addition, relying upon and discussing a decision from the United States Court of Appeals for the Third Circuit, *Marathon Petroleum v. Secretary of Finance for Delaware*, 876 F.3d 481, 488 (3d Cir. 2017), this Court concluded that

5

the "*Texas* trilogy" line of cases from the United States (U.S.) Supreme Court[5] "does not foreclose a state from conduct[ing] an appropriate examination to determine if there is fraud or another basis for determining that property may be escheated," and, further, that "United States Supreme Court precedent does not preclude a state from examining a holder's unclaimed property records in order to verify their accuracy, so long as the state's information requests do not appear to be obviously pretextual or insatiable." *Id.*, slip op. at 27-28. Reviewing the allegations in Treasurer's complaint, and accepting them as true, this Court determined that "Treasurer's information requests do not appear obviously pretextual or accurately described as insatiable." *Id.*, slip op. at 28.

Finally, in disposing of the third issue, this Court referenced a statutory provision from DAUPA, determined that "it does not appear that DAUPA exempts PII from the scope of Treasurer's examination," and noted that "[i]f a holder fails to report this information to Treasurer, then Treasurer may seek to obtain it pursuant to The Fiscal Code's Examination and Adjustment Provision." *Id.*, slip op. at 31-32. Given the averments in the complaint, we stated that "there is reason to believe that PPL has failed to satisfy DAUPA's reporting requirements," "Treasurer may be authorized to compel the electronic production of that information," and, consequently, "Treasurer has stated a claim because it does not appear with certainty that Treasurer is precluded from compelling PPL to produce its shareholders' PII." *Id.*, slip op. at 32. Parenthetically, we buttressed our conclusion with the fact, under a decision from the Delaware Court of Chancery, *Department of Finance v. Univar, Inc.* (Del. Ch., No. CV 2018-0884-JRS, filed May 21, 2020), "this Court is capable of fashioning a confidentiality order that would ensure that [Treasurer's auditor,] Kelmar[ Associates,

---

[5] *Texas v. New Jersey*, 379 U.S. 674 (1965); *Pennsylvania v. New York*, 407 U.S. 206 (1972), and *Delaware v. New York*, 507 U.S. 490 (1993).

LLC],[6] complies with Pennsylvania law," and does not disclose shareholder information to third parties. *Id.*, slip op. at 32 n.14; *see also* 72 P.S. § 1301.23(d) ("Documents and working papers obtained or compiled by the State Treasurer, or the State Treasurer's agents, employees or designated representatives, in the course of conducting an examination are confidential and are not public records . . . .").

For these reasons, we overruled PPL's revised preliminary objections, ultimately concluding that Treasurer stated claims upon which relief can be granted.

On August 19, 2021, PPL filed an Answer and New Matter. Pertinent here are PPL's Fourth, Fifth, and Sixth New Matters, which mimic the arguments raised in its revised preliminary objections.

**FOURTH NEW MATTER**

In its Fourth New Matter, PPL lodges the following legal challenge to Treasurer's authority to require PPL to produce its documents in electronic format:

> [4]d. [] Treasurer fails to cite any authority to support its position that it is entitled to an electronic file production of PPL's comprehensive shareholder records, including all shareholder PII, regardless of when the shares were purchased or where the shareholder resides. There is no requirement in DAUPA that a holder must electronically transmit data (especially sensitive shareholder PII) to the Treasurer or its third-party auditor after PPL has on multiple occasions offered to facilitate Kelmar's on-site examination of PPL's unredacted shareholder files. Thus, the [c]omplaint fails to state a claim for relief.

---

[6] In 2017, the Treasurer retained Kelmar Associates, LLC (Kelmar) as its designated agent to conduct an examination of all unclaimed property liabilities attributed to the issuance of securities for PPL. *See* Compl. ¶ 16.

7

(Answer and New Matter, at 16-17.)

## FIFTH NEW MATTER

In its Fifth New Matter, PPL raises the following legal challenges to Treasurer's authority to test and check the accuracy of PPL's records and also contends that Treasurer's claims for injunctive and declaratory relief to enforce the Subpoena are barred under the doctrine of federal preemption:

[5]a.  In its [c]omplaint, Treasurer pleads on multiple occasions that [she] requires the electronic production of all of PPL's shareholder records in order to perform "software analytics," "accuracy tests," and "cross-checks" using third-party data sets that presumably include the Social Security Administration's Death Master file or other internet-based databases,  which Treasurer presumes may be used to contradict or "correct" PPL's official shareholder records.

b. [] Treasurer's claims for injunctive and declaratory relief are preempted by federal common law governing the choice of law rules designed to resolve conflicts among states over unclaimed intangible property and by federal securities regulations governing the maintenance and contents of master securityholder files.

c. Treasurer's and Kelmar's expressed intent to conduct such analytics and to contradict or "correct" PPL's master securityholder files violates the plain command federal common law established by the U.S. Supreme Court in *Texas v. New Jersey*, 379 U.S. 674 (1965) and its progeny, as well as federal securities regulations [].

d. While [] Treasurer has the authority to determine compliance with DAUPA (*e.g.*, whether PPL has properly reported to Treasurer those shareholders with whom PPL has lost contact for three years), Treasurer lacks authority under DAUPA or any other statute to determine whether PPL's shareholder records, as maintained by its transfer agent under [Securities and Exchange Commission] rules, are "incorrect" or "wrong" as alleged in §§ 13 and 28 of the Complaint.

(Answer and New Matter, at 17-18) (footnotes omitted).


## SIXTH NEW MATTER

In its Sixth New Matter, PPL raises the following additional legal challenge to Treasurer's authority to enforce the Subpoena in order to conduct "software analytics," "accuracy tests," or "cross-checks":

6. [Treasurer's] claims for injunctive and declaratory relief to enforce the Subpoena in order to conduct "software analytics," "accuracy tests," or "cross checks" are barred under Pennsylvania law, 72 P.S. § 1301.23(a)(2)).

a. Pennsylvania law provides that each class of potentially escheatable property is modified by "what is shown by the records of the holder," not what is shown in the records of the Treasurer, or Kelmar, or anyone else.

b. [] Treasurer lacks authority under DAUPA or any other statute to determine whether PPL's shareholder records, as maintained by its transfer agent under SEC rules, are "incorrect" or "wrong" as alleged in §§ 13 and 28 of the Complaint.

(Answer and New Matter, at 18-19.)

On November 22, 2021, Treasurer filed the Application currently before the Court.[7] Treasurer asks the Court to dismiss PPL's Fourth, Fifth, and Sixth New Matters and grant it judgment on the pleadings in its favor and against PPL, declaring as a matter of law that: in performing an audit of the records of an unclaimed securities property holder under DAUPA, and The Fiscal Code, (1) Treasurer has the authority to require holder to produce their shareholder records in electronic format; (2) Treasurer has the authority to test the accuracy of the holder's unclaimed property records and make adjustments to the unclaimed property reports as necessary to ensure they are correct; and (3) federal law and federal securities regulations do not preempt Treasurer's power in these areas. Treasurer argues that this Court has already addressed and resolved these legal issues when it overruled PPL's preliminary objections and that PPL has merely repackaged these objections in its Fourth, Fifth, and Sixth New Matters, in an attempt to re-litigate them.[8]

---

[7] Partial summary relief may be granted on one or more issues in an action. *See Angino & Rovner v. Jeffrey R. Lessin & Associates*, 131 A.3d 502, 511 (Pa. Super. 2016) (affirming order granting motion for partial judgment on the pleadings); Pa. R. Civ. P. 1035.2 note ("Partial summary judgment, interlocutory in character, may be rendered on one or more issues of liability, defense or damages."). Applications for judgment on the pleadings serve to resolve expeditiously legal questions and undisputed factual matters that do not require further development in discovery or at trial. *See UGI Utilities, Inc. v. City of Reading*, 179 A.3d 624, 628, 632 (Pa. Cmwlth. 2017) (granting petitioner's application for partial summary relief); *UGI Utilities, Inc. v. City of Lancaster*, 125 A.3d 858, 860, 865-66 (Pa. Cmwlth. 2015) (same).

[8] The Court is not precluded by the earlier decision from ruling on the present motion. Even after the denial of an earlier demurrer, as in this case, a motion for judgment on the pleadings permits the trial court to re-examine the legal sufficiency of the case in light of any additional facts and legal theories developed as a result of new matter and the reply thereto. *DiAndrea v. Reliance Savings & Loan Association*, 456 A.2d 1066, 1069 (Pa. Super. 1983); *see also Koresko v. Farley*, 844 A.2d 607, 614 (Pa. Cmwlth. 2004) (entertaining motion for judgment on the pleadings filed after denial of a demurrer).

## II. Issues

### A. Fourth New Matter - Whether, as a Matter of Law, Treasurer is Authorized to Direct the Production of Unclaimed Property Records in Electronic Format

First, Treasurer requests relief in the nature of judgment on the pleadings in its favor and against PPL, declaring as a matter of law that Treasurer has the authority to direct a holder's production of shareholder records in electronic format. Treasurer asserts that PPL's position in its Fourth New Matter is contrary to what this Court has already held in this case. Treasurer raises the same arguments it successfully raised in opposition to PPL's preliminary objections.

PPL, for its part, concedes that this Court already answered this question in its July 20, 2021 Order, and denies that there is an existing dispute that Treasurer may command PPL to produce records electronically to facilitate that compliance audit.[9] Instead, it asserts that it is the **scope** of the information demanded that is the subject of its Fourth New Matter, not the format of the production. On that question, it is PPL's position that Treasurer may not seek sensitive shareholder PII, especially with regard to shareholders lacking a connection to Pennsylvania. More specifically, PPL argues "that Treasurer does not and cannot justify its demands for the electronic production of **all** PPL shareholder records for **all of** PPL's thousands of shareholders regardless of the state or country in which they reside. Th[e] [S]ubpoena broadly captures sensitive personal and financial account information related to thousands of shareholders who have no connection to Pennsylvania, or to any category of property

---

[9] We note that PPL did previously argue in litigating its preliminary objections that DAUPA and The Fiscal Code's Examination and Adjustment Provision only authorized Treasurer to "examine" a holder's records not to compel the production of them and argued that these statutes do not require electronic production. *See Torsella*, slip op. at 12-13 (citing PPL's brief).

even theoretically escheatable under DAUPA." (PPL's Brief at 23-34) (emphasis in original).

To reiterate, Treasurer has only asked the Court to declare as a matter of law that it is authorized under DAUPA and The Fiscal Code's Examination and Adjustment Provision to compel electronic production of records. This is purely a legal issue that we may resolve at the pre-trial stage. As noted, this Court *en banc* rendered an opinion on that legal issue by holding that the Treasurer has that authority. In concluding that Treasurer had stated a claim for relief, we stated:

> Treasurer responds that the [c]omplaint states valid claims for relief because Treasurer has the authority to compel PPL to electronically produce its shareholder records. First, Treasurer claims that DAUPA authorizes it to "conduct record examinations in any medium[,]" including electronic media, because DAUPA defines a "record" as "information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form." (Treasurer's Br. at 18-19 (quoting 72 P.S. § 1301.1).)

> * * *

> In addition, Treasurer contends that case law supports Treasurer's position that Treasurer may require PPL to produce electronic records for examination even though PPL has offered to make its records available for on-site examination. Treasurer relies on several cases, including *Department of Finance v. AT&T Inc.*, 239 A.3d 541 (Del. Ch. 2020), explaining that the Delaware Court of Chancery held that "language identical to DAUPA's authorization to 'examine' unclaimed property records entails the authority to require a holder to query a database and 'provide that information in an electronically useable format.'" (Treasurer's Br. at 20 (quoting *AT&T*, 239 A.3d at 574).)

> * * *

12

> Treasurer's interpretation of the statutory language is persuasive, especially because there is no mention in The Fiscal Code's Examination and Adjustment Provision of any powers reserved to unclaimed property holders, and there is no language allowing holders to decide whether to exhibit or deliver their records. Thus, we cannot say at this stage of the proceedings that Treasurer's interpretation is incorrect.

*Torsella*, 2021 WL 3046660, slip op. at *18-19.

Neither party has identified any change in law or circumstances that would warrant a deviation from our prior ruling on the issue. Accordingly, the Court concludes, consistent with our decision in *Torsella*, that Treasurer possesses the statutory authority under DAUPA and The Fiscal Code's Examination and Adjustment Provision to direct the production of unclaimed property records in electronic format. Consequently, we grant Treasurer's Application to the extent she requests such declaratory relief and strike/dismiss PPL's Fourth New Matter. That said, however, we decline at this juncture to address the separate fact-specific issue of whether the Subpoena is overly broad on its face because it requests records that may not be escheatable under Pennsylvania law. Notably, Treasurer does **not** currently seek a determination of law on that issue, as it is contained within PPL's Second New Matter, which Treasurer did not request to be dismissed/stricken in her present Application.[10]

---

[10] According to Treasurer, to address PPL's concerns that the Subpoena is overbroad, she has provided draft revised subpoenas, calling for a two-stage process to narrow the information sought from PPL and requesting PPL's comments. Treasurer submits the revised two-stage process should moot PPL's narrow, fact-specific First, Second, and Third New Matters. The first subpoena will seek more limited information about all of PPL's shareholders, including minimal information about shareholders whose property would not be escheatable to Pennsylvania according to PPL's current records. The second subpoena will seek more detailed information only about shareholders as to whom review of the information produced in response to the first subpoena reveals an anomaly. Treasurer concedes that the revised subpoenas would not resolve the questions of law raised in the present Application. *See* Treasurer's Br. at 17, n. 5.

13

**B. Fifth and Sixth New Matters - Whether DAUPA and The Fiscal Code Authorize Treasurer to Verify the Accuracy of PPL's Records**

Next, Treasurer requests a determination that PPL's Fifth and Sixth New Matters fail as a matter of law. Both the Fifth and Sixth New Matters challenge Treasurer's authority to conduct accuracy tests or cross-checks of PPL's shareholder records to ensure compliance with her obligations.

Treasurer argues that the plain language of DAUPA's Examination Provisions and The Fiscal Code's Examination and Adjustment Provision "confirm Treasury's authority to meaningfully evaluate PPL's compliance, which requires the ability to run accuracy tests and cross-checks." (Treasurer's Br. at 29.) According to Treasurer,

> [n]either [DAUPA's Examination Provisions nor The Fiscal Code's Examination and Adjustment Provision] imposes any limitation on how Treasury and its agents may analyze data obtained from a holder. To the contrary, those statutes state that their purpose is to ensure appropriate reporting of unclaimed property and compliance with DAUPA. Compliance requires that Treasury and its agents be able to cross-check holder data in order to determine, for example, whether that data contains errors. Mistakes happen; numbers are transposed; state codes or addresses contain typos; and misspellings occur. There is no statutory requirement that Treasury accept on faith representations made by a holder.

*Id.* at 29-30. Further, citing *Torsella*, Treasurer contends that PPL's "records do not conclusively determine escheatability, and Treasury may look at other records to confirm them"; "the accuracy of a holder's records is relevant to its compliance with its unclaimed property obligations"; and DAUPA's Examination Provisions and The Fiscal Code's Examination and Adjustment Provision "expressly recognize[] that a holder's report may be 'inaccurate' or 'false' as well as incomplete [and] specifically employ Treasury to 'examine and revise' unclaimed property records." *Id.* at 31-32.

In response, PPL concedes that Treasurer has the statutory authority "to audit PPL's **compliance** with DAUPA[] and examine PPL's records to verify that PPL has **properly reported** any unclaimed property consistent with its official records and its legal obligations." (PPL's Brief at 22.)  However, again relying on federal common law, specifically the "*Texas* trilogy" line of cases from the U.S. Supreme Court, as it did in *Torsella*, PPL suggests that—as a matter of federal common law—Kelmar, on behalf of Treasurer, cannot engage in "analytics," "cross-checks," and/or an "independent examination of PPL's shareholder records against the Social Security Administration's Death Master File or other Internet databases . . . to 'assess the accuracy' of PPL's underlying shareholder records . . . ." (PPL's Br. at 31.) Furthermore, PPL asserts that "Treasurer has no legal authority under any Pennsylvania law to override or '***correct***' the official records of PPL or any holder with different names, addresses, accounts, or other information based upon conflicting data provided by Kelmar, or any other third-party datasets or software."  (PPL's Br. at 22) (emphasis in original).  In this vein, PPL refers to DAUPA's Examination Provisions and The Fiscal Code's Examination and Adjustment Provision and states as follows:

> *Nowhere* in these provisions is Treasurer (or [her] auditor) authorized to modify the holder's underlying, official shareholder records.  Treasurer and auditor may only demand correction of the **unclaimed property reports** to the extent the audit examination comparing the underlying records to the reports reveals an inconsistency.
>
> * * *
>
> Neither Kelmar nor Treasurer may change or "correct" those records in order to assert claims over intangible securities property to which there is no lawful entitlement.

*Id.* at 33, 35 (emphasis in original).

15

The Court concludes, consistent with our decision in *Torsella*, that Treasurer possesses the statutory authority to verify the accuracy of PPL's shareholder record using software analytics. The plain language of DAUPA and The Fiscal Code recognizes that a holder's records may not be accurate and thus Treasurer may examine and revise them as necessary. *See* 72 P.S. § 1301.23(a) (stating a holder's report may be inaccurate, false, and/or incomplete). Moreover, The Fiscal Code's Examination and Adjustment Provision authorizes Treasurer to "examine and revise" unclaimed property accounts. 72 P.S. § 1602(a). These provisions support that Treasurer is authorized to verify the accuracy of a holder's unclaimed property records. Neither statute prohibits Treasurer from verifying the accuracy of a holder's records using software analytics or by cross-checking data against third-party databases.

PPL's Fifth and Sixth New Matters are stricken, with the following *proviso*. However, at this juncture, we shall refrain from ruling on the issue of whether Treasurer may make actual alterations or modifications to the shareholder documents themselves. Treasurer does not seek a ruling to this effect in its Application. As such, the Fifth New Matter is preserved to the limited extent that subsections (a) and (c) challenge Treasurer's authority to alter or modify PPL's official shareholder records. (New Matter, pp. 17-18.)

### C. <u>Federal Preemption</u>

In PPL's Fifth New Matter, PPL asserts that Treasurer's claims for injunctive and declaratory relief to enforce the Subpoena are barred under the doctrine of federal preemption. PPL asserts that Treasurer's authority to compel production of PPL's shareholder records and audit them to ensure their accuracy is preempted by federal common law governing the choice of law rules designed to resolve conflicts among states over unclaimed intangible property and by federal securities regulations

16

governing the maintenance and contents of master securityholder files. (PPL New Matter ¶ 5(b).) It asserts that Treasurer's intent to conduct analytics and to contradict or "correct" PPL's master securityholder files violates the plain command federal common law established by the U.S. Supreme Court in *Texas v. New Jersey* and its progeny, as well as federal securities regulations.

Presently, Treasurer asks us to conclude as a matter of law that federal law, including the securities regulations cited by PPL, do not preempt or conflict with Treasurer's authority to compel production of PPL's shareholder records and audit them to verify their accuracy.

In response, PPL candidly admits that generally "[f]ederal common law and securities regulations . . . do **not** prevent Treasurer or its auditor from performing a (properly[-]scoped) compliance audit to verify that a holder's unclaimed property reporting under DAUPA conforms to the information shown in its official shareholder records." (PPL's Br. at 22) (double emphasis in original). According to PPL, its challenge to Treasurer's audit authority is more nuanced. Its dispute is limited "to the extent [Treasurer] seeks to **change the records**, for example to change a shareholder's address from one state to another based on a third-party data source, such change would be prohibited by both federal common law and federal securities regulations." *Id.* PPL maintains that

> well established federal common law, federal securities regulations governing shareholder recordkeeping and reporting, and the DAUPA statute itself all consistently reinforce that it is PPL's records alone that control whether intangible securities property is abandoned, whether a shareholder contact is "lost," and to which state the holder must report such unclaimed property. Neither Kelmar nor Treasurer may change or "correct" those records in order to assert claims over intangible securities property to which

17

there is no lawful entitlement.

(PPL's Brief at 35.)

In *Torsella*, we rejected PPL's contention that federal law precludes Treasurer from verifying the accuracy of PPL's records. *See Torsella*, 2021 WL 3046660, slip op. at *26-28. PPL has presented no persuasive argument that warrants a departure from our prior ruling. Accordingly, we conclude as a matter of law that federal law, including the securities regulations cited by PPL, do not preempt or conflict with Treasurer's authority to compel production of PPL's shareholder records and audit them to verify their accuracy.

Thus, PPL's Fifth New Matter is also dismissed/stricken for this reason, in addition to the reasons stated in resolution of the second issue.

### III.   Conclusion

Based on the foregoing, we grant Treasurer's Application and its request for determinations of law, specifically that (1) Treasurer possesses the statutory authority to direct the production of unclaimed property records in electronic format; (2) Treasurer possesses the statutory authority to verify the accuracy of PPL's shareholder record using software analytics; and (3) federal law does not preempt Treasurer's authority to compel production of PPL's shareholder records and audit them to ensure their accuracy. Based on these legal determinations, the corresponding and incompatible averments in PPL's Fourth, Fifth, and Sixth New Matters are hereby stricken. However, for reasons explained, the Fifth New Matter is preserved to the limited extent that subsections (a) and (c) dispute Treasurer's power to make alterations and actually make corrections to PPL's official shareholder records themselves.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stacy L. Garrity,        :
in her official capacity as the        :
Treasurer of the Commonwealth,        :
          Plaintiff        :    No. 272 M.D. 2019
       :
         v.        :
       :
PPL Corporation,        :
          Defendant        :

## *<u>ORDER</u>*

AND NOW, this 23rd day of June, 2023, in accordance with the foregoing Opinion, Treasurer's Application for Partial Summary Relief in the Nature of a Motion for Judgment on the Pleadings, requesting determinations of law, specifically that: (1) Stacy L. Garrity (Treasurer) possesses the statutory authority to direct the production of unclaimed property records in electronic format, (2) Treasurer possesses the statutory authority to verify the accuracy of PPL Corporation's (PPL) shareholder records using software analytics, and (3) federal law does not preempt Treasurer's authority to compel production of PPL's shareholder records and audit them to ensure their accuracy, is **GRANTED**. Based on these legal determinations, the corresponding and incompatible averments in PPL's Fourth, Fifth, and Sixth New Matters are hereby **DISMISSED/STRICKEN**. For the reasons stated in the Opinion, PPL's Fifth New Matter is preserved only to the limited extent that subsections (a) and (c) dispute Treasurer's power to make alterations and actually make corrections to PPL's official shareholder records themselves.

                                      _____
                                      PATRICIA A. McCULLOUGH, Judge